## WILLIAMS ET AL. v. CAREY, MAYOR, ET AL.

1. **Cities and Towns**: POWER TO NARROW STREET: EQUITABLE CONTROL: IMAGINARY DAMAGES. Under the statute, (Code, § 464.) the power of cities to narrow, widen or vacate streets is practically unlimited, when exercised for the public good, and yet it cannot be arbitrarily exercised under the pretense that the public good requires it; but is subject to equitable control. The judgment of the city council will ordinarily be conclusive in such cases as to what the public good requires. And in this case, where the city council proposed to narrow the street in question, the title of which was in the city, by vacating 12 feet along the east side thereof, and conveying it to the owners of the lots abutting on that side, in consideration that such lot-owners would dedicate a similar strip off the east end of their lots for the widening of the street which bounded their lots on the east, thus making the widened street 50 feet wide, and leaving the other one only 41½ feet wide, *held* that the owners of lots abutting on the west side of the narrowed street could not enjoin the council from carrying their proposed action into effect, on the ground that they would be damaged thereby, inasmuch as the damages relied on by them, and shown by their evidence, were imaginary rather than actual. (See opinion for many cases cited in argument.)

*Appeal from Polk Circuit Court.*

WEDNESDAY, OCTOBER 26.

THE petition states that the plaintiffs are the owners of certain lots in Leynor's addition to the city of Des Moines,

which abut on Madison street, and that the defendants constitute the council of said city, and propose to vacate 12 feet off of the east side of said street. To prevent this is the object of this action. At the hearing the defendants were perpetually enjoined from vacating any portion of said street.

*Detrick & McMartin* and *C. P. Holmes*, for appellants.

*W. B. Raymond* and *P. Gad Bryan*, for appellees.

SEEVERS, J.—The conceded facts are that, when Leynor's addition to Des Moines was laid out, platted and recorded, the fee or title to the streets was vested in the city. Madison street runs north and south, parallel to Nineteenth street. The former is 53½ feet wide, and Nineteenth street is 38 feet wide. Madison is a short street, being only 1,000 feet long, as we understand. The plaintiffs own property abutting on the west side of Madison street, and the city council proposes to vacate 12 feet off of the east side of said street, and convey the same to the owners of lots between that street and Nineteenth, in consideration of which said property owners agree to convey to the city the same quantity of land off of the east side of their lots, which abut on Nineteenth street. So that, if this project is carried into effect, Nineteenth street will be widened 12 feet, and Madison will be that much narrower than it now is.

It is provided by statute that cities have the "power to lay off, open, widen, straighten, narrow, vacate, extend, establish and light streets.   *   *   *"  (Code, § 464.) Under this statute the defendants claim that the city has the power to do what is proposed to be done. This is denied by the plaintiffs; their claim being that they became the owners of their lots upon the faith and implied promise that Madison street should always remain a public highway, of the same width as it was when they purchased their lots, and that they will be materially damaged if the proposed change in he width of such street is made. The defendants deny that

the plaintiffs will be in any material respect damaged by such change.

Both parties have cited and largely rely on the prior decisions of this court in support of their respective theories. The plaintiffs cite and rely on *City of Dubuque v. Maloney*, 9 Iowa, 450, and *Cook v. City of Burlington*, 30 Id., 94. In the first case, the fee to the streets was in the abutting property owners, and in the latter, the fee to the land in controversy was in the city. It is evident, it seems to us, that the facts just stated make a material difference, and that the rights of abutting property owners may be greater in such case than where the fee is in the city. In *Yost v. Leonard*, 34 Iowa, 9, the proprietor who had laid out the town sought to vacate certain streets, the title to which he had conveyed to the town, and such were in substance the facts in *Fisher v. Beard*, 32 Iowa, 346. These cases are materially different from the one at bar. The plaintiffs cite *City of Marshalltown v. Forney*, 61 Iowa, 578, and *Dempsey v. City of Burlington*, 66 Id., 687. In the former case there were no private rights involved. The material question was whether the act of the city vacating the alley was *ultra vires*. In the latter, the only questions were as to the validity of the ordinance, and whether the parties were entitled to notice of the application made for the vacation. What is there said as to the power of the city was by way of argument on the question whether the ordinance was void because it contained more than one subject. In *Warren v. Mayor of Lyons*, 22 Iowa, 351, the city claimed the right to divide a square, which had been dedicated to the public as such by the proprietor, into lots, and sell the same, and convert the proceeds to its own use, against the protest of such proprietor, who owned lots which abutted on streets abutting on the square; and in *Gray v. Iowa Land Co.*, 26 Iowa, 387, the plaintiff had no such interest in the maintenance of the streets as they at one time existed as to allow her to object to their being changed or vacated. In *Milburn*

*v. City of Cedar Rapids*, 12 Iowa, 246, and *Barr v. City of Oskaloosa*, 45 Iowa, 275, the city, in substance, granted the right of way over certain streets to railway companies, without the consent of the abutting property owners.

But it may be said as to these cases that the use of the streets was not diverted. That is, they were still devoted to a public use, different, possibly, from the one intended by the proprietor who laid out the town, and conveyed the fee in the streets to the municipality in trust for the public. While in none of these cases heretofore determined by this court are the facts similar to those in the case at bar, yet the power of the city, in a proper case, to vacate a street, has been several times affirmed. Such power is clearly conferred by statute. Under it the power to narrow, widen, or vacate a street is practically unlimited, when it is exercised for the public good, and yet it cannot be arbitrarily exercised under the pretense that the public good requires it. While this is true, it is subject to equitable control, and, therefore, to a large extent, each case must be determined in accordance with its own particular facts. An abutting lot-owner cannot arbitrarily object to the vacation of a street, or part of a street, nor can he, upon slight grounds, prevent the accomplishment of that which is a material benefit to the general public; and the conclusion of the city council will, ordinarily at least, be conclusive as to the question whether the vacation of a particular street is for the public good. This being so, the question is whether the plaintiffs will be materially damaged. That they will be damaged to some extent will be conceded; but no tangible property belonging to them will be taken or appropriated for the public benefit. In a city or other community, at least some rights of an individual must be subordinate to the general good. A careful consideration of the evidence satisfies us that the plaintiffs will not be materially damaged by the proposed vacation of a part of Madison street. It is true that the plaintiffs, or some of them, testify generally that in their opinion each lot owned

by them will be worth $200 less if the street is vacated as proposed; but when they state the ground on which such opinion was formed, there are but two things upon which their opinion is based. One is that the owners of lots between Madison and Nineteenth streets will improve the same, so that their barns, stables, and other out-houses will be on Madison street, and therefore may, and probably will, be 12 feet nearer their premises than they possibly could be if no part of the street is vacated. It does not certainly appear that such out-houses will be so constructed; but, conceding that they will be, it does not follow that the plaintiffs will be materially prejudiced thereby. After the vacation, the street will be 41 feet wide, and we can but think that the supposed damage is largely imaginary. The evidence, at least, fails to show that it will be substantial, and the proximity of such houses to the property of the plaintiffs is not such, it seems to us, as to permit them to prevent the vacation of the street, which must be presumed to be for the general good. So, too, as to the reduced width of the street. The plaintiffs will not be deprived of the free access to, and egress from, their property. And it does not follow by any means that the reduction of the width of the street will materially impair the value of their property, or subject them to inconvenience. We therefore are of the opinion that the judgment of the circuit court is erroneous.

REVERSED.