BURLINGTON GASLIGHT COMPANY v. THE BURLINGTON·
CEDAR RAPIDS & NORTHERN RAILWAY COMPANY,
Appellant.

1  **Construction of Grant.**  Where a city is permitted to use land·
2  for "a public highway and other public purposes," the land may be
   used to facilitate the business of a railway.

**Vacation: Narrowing Driveway: Damages.**  The fact that a·
3  change of grade will narrow a driveway in front of plaintiff's gas·
   works from thirty-six to twenty feet, will not, under the facts at bar,
   entitle him to an injunction.

4  **Same: Presumptions.**  Ordinarily, a vacation ordered by the·
   council is conclusively deemed to be for the public good.

*Appeal from Des Moines District Court.*—HON. JAMES·
D. SMYTHE, Judge.

SATURDAY, MAY 26, 1894.

THIS is a suit in equity by which the plaintiff seeks·
to enjoin the defendant from making an excavation,
and erecting a wall and a freight depot, in what is·
known as "Front Street," in the city of Burlington.
The defendant answered the petition, and there was a
hearing on the merits, which resulted in a decree for·
the plaintiff.    Defendant appeals.—*Reversed.*

*S. K. Tracy* for appellant.

*P. H. Smyth* for appellee.

ROTHROCK, J.—What is known as "Front Street,"·
in the city of Burlington, is a strip of land bounded on
the east by the Mississippi river.    The plaintiff is the·
owner of five lots which abut on said street on the
west, and said lots are occupied and used for the pur-
pose of manufacturing gas to be used by the inhabi-
tants of the city.    The land known as "Front Street"

is about two hundred feet in width, opposite the plaintiff's lots. The defendant and another railroad company are occupying a part of said strip of land or street with railroad tracks, and switches, and a freight house, which is located between the railroad tracks and the river. The freight house is located across the railroad tracks and opposite to the plaintiff's gas works. These tracks and the freight house have been in use for a number of years. Before the railroad was graded, the land in front of plaintiff's lots gradually descended towards the river, and it was necessary to grade the railroad down to a level, which made a perpendicular cut of several feet, and a retaining wall was erected so as to sustain the bank and keep it in place. This wall is about thirty-six feet east of the line of the plaintiff's lots. The plaintiff makes no complaint of this occupation of the street east of its lots. The cause of action is founded upon the fact that the defendant was about to remove the present retaining wall, and widen the excavation of the street toward plaintiff's lots, and build a new retaining wall about two hundred and fifty feet long, and within twenty or twenty-one feet of the east line of said lots. It appears that the defendant's purpose in making the excavation and removing the retaining wall east was to make space for a new freight depot which it intended to erect west of its railroad tracks. The defendant claims that it has a right to make the proposed improvement, because the excavation is for the purpose of not only making room for a depot, but also for making a wagon road, so that the public may safely transact business at said depot without the danger of crossing numerous railroad tracks, and that it has the right to do so because the strip of land is not exclusively a street, but may be used for other public purposes. The plaintiff insists that the whole of the two hundred feet between its lots and the river is a public street, and that any obstruction upon

said strip of land which impedes travel thereon is unlawful, and may be enjoined.

If this strip of land was originally set apart for the purposes of a street for public travel only, there would be force in the claim made by the plaintiff. The city of Burlington was laid out in pursuance of an act of congress passed July 2, 1836, in which it was provided "that a quantity of land of proper width on the river bank at the town of Burlington, and running with the said river the whole length of said town, shall be reserved from sale (as shall also the public squares) for public use as public highways *and for other public uses.*" By an act of congress passed February 14, 1853, the title to said property was relinquished to the city of Burlington. It was held in the case of *Cook v. City of Burlington*, 30 Iowa, 94, that "the city took it for the same purposes for which the government held it, subject to the same trusts, and affected by the same conditions." The claim that this body of land two hundred feet wide can be devoted to no other public use than street travel can not be sustained. It is expressly provided by the act of congress that it shall remain forever for public use as public highways, "and for other public uses." The fact that the land reserved was two hundred feet wide precludes the idea that it was intended for public travel alone. The Mississippi being one of the great navigable rivers of the United States, by which all the products of the country adjacent to it were removed to the market, and goods, wares, and merchandise were received by the settlers, it ought not to be seriously contended that said land can not be devoted to the purposes of facilitating and prosecuting the commercial interests of the public by such uses thereof as will accomplish the object for which it was intended. The authorities cited by counsel for appellant have no application to such a dedication to public use as is made in the act of con-

gress under consideration.   We need not cite the cases nor discuss their applicability.   Not one of them is founded upon a dedication like this, either in the form of dedication or in principle.   But we do not hold that this land may be devoted to such "other public uses," to the injury and damage of the owners of lots abutting on this public land or street; and it appears to us that the only real question in this case is whether the plaintiff has shown that it has any real cause of complaint.   It is difficult to explain the exact situation of the *locus in quo*.   It is sufficient, however, to say that what is known as Front street has not been traveled, north of the plaintiff's gas works, for years.   It can not be traveled, because of the railroad tracks and the bluffs adjacent to the river.   The retaining wall now in front of the gas works prevents approach to the works from the east.

The whole controversy narrows itself down to the question whether the plaintiff shall use a driveway thirty six feet wide, or one about twenty feet in width.

The question as to the right to change the grade of a street is much discussed in argument.   The grade of the greater part has been changed already, and presumably by the consent of the plaintiff, for no complaint is made of the retaining wall now in use.   There is not one word in the evidence showing that the plaintiff would be damaged in any sum of money by the proposed change.   It is true that there is evidence that there is no other means of driving in and out to and from the gas works except by Front street, without incurring great expense in tearing down buildings and it is claimed that twenty feet is too narrow for a driveway.   To make it still narrower, it is suggested in argument that allowance should be made for a sidewalk twelve feet wide.   What demand there is for a sidewalk does not appear.   It is conceded that there is no public travel at that point, and the thought that

there is a necessity for a sidewalk twelve feet wide to accommodate anyone ought not to be considered. It appears to us that the case of *Williams v. Carey*, 73 Iowa, 194, 34 N. W. Rep. 813, is, in principle, very much like the case at bar. That was an action in equity by the owners of lots abutting on the west side of a street to enjoin the city of Des Moines from vacating twelve feet off of the east side of the street. It was held that a court of equity would not entertain the action, because the damages to the plaintiff's lots were imaginary, rather than actual. In that case some of the plaintiffs testified as witnesses that each lot owned by them would be two hundred dollars less in value if the street was narrowed as proposed. But this court found, from other facts in the case, that the said estimate of damages had no real foundation. Now, it may be said that the cases are different, because this is the changing of the grade of a street, and that was a vacation of the street. There is no real difference. We must presume that the present retaining wall was erected with plaintiff's consent, and the street narrowed to that extent. The question now is whether the plaintiff's property will be diminished in value to any appreciable extent by reducing the width of the street or passageway as proposed. We find no evidence that such is the fact.

It may be proper to say further, in conclusion, that the city council of Burlington, by a resolution, authorized the defendant to set back the retaining wall as proposed, provided it saved the city harmless from all damages that might accrue by reason of doing so, and that the space made by setting the wall back was to be used exclusively for a public wagon road. It is said in *Williams v. Carey*, 73 Iowa, 194, 34 N. W. Rep. 813, that "an abutting lot owner can not arbitrarily object to the vacation of a street or part of a street, nor can he, upon slight grounds, prevent the accomplish-

ment of that which is a material benefit to the general public, and the conclusion of the city council 4 will, ordinarily at least, be conclusive as to the question whether the vacation of a particular street is for the public good." It should further be stated that this part of the street has been, to all intents and purposes, vacated as a street for many years, except as an approach to the gas works, and a way for the public to travel to and from the freight depot of the defendant. And we may say, further, that, even if the case be considered a change of the established grade of a street, we think there is no sufficient evidence of damages to maintain an action under section 469 of the Code. That section of the Code does not authorize any action or proceeding, unless the alteration of the grade will "injure or diminish the value of the property." We discover no ground upon which the injunction can be sustained, and the decree is RE-VERSED.