DUFF MERRICK v. INTRAMONTAINE RAILROAD COMPANY.

*Street Railways— Use of Streets of City—Additional Servitude—Rights of Abutting Property Owners.*

1. The construction of a street passenger railway upon the surface of a street does not impose any additional servitude upon property abutting thereon so as to require the condemnation of the rights of the owners in such property, provided the railway is so constructed as not to shut the abutter out or off with embankments. (*White* v. *Railroad*, 113 N. C., 610, distinguished.)

2. Street railways, being for the general convenience of the public, an injunction will not be granted against the construction of a street railway on a street at the suit of an abutting property owner where it does not appear that the plaintiff would be irreparably endamaged or that the defendant is insolvent.

APPLICATION for injunction to restrain defendant from constructing and operating its railroad on certain parts of Montford Avenue, in the City of Asheville, heard before *Graham, J., at Chambers,* in Asheville, on 3rd day of May, 1895. A restraining order was issued and defendant appealed.

*Mr. J. H. Merrimon,* for plaintiff.
*Mr. J. S. Adams,* for defendant (appellant).

FAIRCLOTH, C. J.: Upon examination of the record we assume that the city of Asheville is duly incorporated, with the usual municipal powers, and that the defendant is a corporation with certain powers given by Private Acts, 1895, Ch. 29.

We also assume from the record that Montford avenue is a public street laid out by and under the control of said municipal corporation; also, that the owners of the lots abutting on said avenue have at least proprietary interests in said street. The defendant is authorized by its charter to build a street railway on said avenue by permission of said city of Asheville, which permission has been granted, so far as the city can do so in law.

This is the real question : Can the city authorize the building of a street railway on one of its streets without condemnation or consent of the adjacent lot-owners ? The plaintiff denies such authority and relies on *White* v. *Railroad,* 113 N. C., 610, in which it was held that the use of a street for an ordinary steam railroad is not a legitimate use of the street for public purposes, and neither the Leg-

islature nor city can authorize such a railroad to be constructed and operated thereon against the abutting proprietors' will, without compensation in damages.

The distinction between a steam railroad and a street railway has not been heretofore presented to this Court. The test seems to be, from the best authorities, whether it is a thoroughfare with distant terminus or is it a mere local convenience within the corporate limits.

"The land taken for streets in cities and boroughs is in the exclusive possession of the municipality, which may use the footways as well as the cartways for any urban servitude without further compensation to the lot-owners. Nor does the construction of a street passenger railway upon the surface of the street impose any additional servitude upon the property fronting on the street so occupied." *Railroad* v. *Montgomery, &c., Ry. Co.,* 167 Penn. St., 70. The other authorities cited and sustaining the above view are: Roads & Streets, (Elliott,) 558; Cooley Const. Lim., 683; Dillon's Mun. Corp., 868 (4 Ed.); *Kennelly* v. *Jersey City,* 30 Atlantic Rep., 531; *Limberger* v. *Ry. Co.,* 30 S. W. Rep., 534.

*Kennelly's* and *Limburger's* cases, *supra,* apply the principle of horse cars to electric street cars. If the street railway should be so constructed—for instance, if it should shut out or shut off the abutter with embankments, and thus materially impair his rights, this would seem to be an additional burden and subject the company to damages.

The right to an injunction without an allegation of irreparable injury, or of insolvency of the defendant, was not urged, and we will put our decision upon the ground taken by counsel. Street railways being for the general convenience, and it not appearing how the plaintiff would

be damaged, we think the defendant should be allowed to proceed, and the restraining order vacated, upon the facts now presented.

Reversed.