MARY L. SNYDER, *et al.*, Appellants, v. THE FORT MADISON STREET RAILWAY COMPANY.

**Injunction:** STREET RAILWAYS: *highways.* A mandatory injunction to compel the removal of an ·electric light pole may be granted when the pole is placed in front of the plaintiff's property without necessity therefor, for the purpose of annoying him and to injure and depreciate the value of his property, and where its placing causes serious injury.

EMINENT DOMAIN. Poles of an electric railway, if properly placed, do not give ground of complaint to an abutting owner, whether he owns the fee of the street or not.

SAME. Poles of an electric railway must not be so placed as to interfere unnecessarily with the right of abutting owners to use and enjoy their property.

DEEMER, C. J. and WATERMAN, J., dissent.

*Appeal from Lee District Court.*—HON. H. BANK, Judge.

TUESDAY, MAY 10, 1898.

ACTION in equity to enjoin the maintaining of a trolly pole in front of the dwelling house of the plaintiffs. A demurrer to the petition was sustained, and judgment was rendered in favor of the defendant for costs. The plaintiffs appeal.—*Reversed.*

*T. B. Snyder* for appellants.

*J. D. M. Hamilton* for appellee.

ROBINSON, J.—The material facts alleged in the petition, and admitted by the demurrer, are as follows: The plaintiffs have owned and occupied as a homestead, since the first day of March, 1892, part of a lot and a dwelling house thereon situated on Broadway

street, in the city of Ft. Madison. The lot is bounded on the west by that street, and the house fronts thereon, and on a public park, from which it is separated by the street. The streets, avenues, parks, and lots of the city were laid out and platted under and by virtue of an act of congress approved July 2, 1836, and an act amendatory thereof approved March 3, 1837, by the government of the United States, from which the title of the plaintiffs was derived. The defendant is a corporation organized under the laws of this state, and is engaged in operating a street railway, which is laid along Broadway street, in front of the premises of the plaintiffs. In the summer of the year 1895, electricity was substituted for the animal power which had been previously used to operate the railway. The trolly system was adopted, and, to aid in supporting the trolly wire, a pole twenty or more feet in height was placed in front of the dwelling of the plaintiffs, in that side of the street which was next to their lot. The petition alleges that the pole is an obstruction to the enjoyment by the plaintiffs of their homestead; that it is a nuisance; that there was no necessity for placing the pole where it is; that it could have been so placed that it would not have affected the plaintiffs seriously; that, before it was erected, the plaintiffs protested against its being placed where it now is, and since its erection have offered to pay to the defendant the cost of moving it to a point near the north line of their property, but that the offer was refused; and that they have been greatly damaged by the placing of the pole where it now is, and will sustain much damage in the future if it be not removed. The petition further states that the defendant has not caused the damage which the plaintiffs have suffered, and will suffer by reason of the erection of the pole, to be assessed, nor has it compensated them for such damage. The plaintiffs ask for a

mandatory injunction requiring the defendant to remove the pole from their property, and particularly from the front of their dwelling house; and they ask, further, that the defendant be perpetually enjoined from erecting or maintaining the pole in front of the dwelling, and for general equitable relief. The demurrer is based upon the ground that the petition does not state facts which entitle the plaintiffs to the relief they ask.

I. The acts of congress under which the town of Ft. Madison was platted are found on pages 962-964 of the Revision of 1860. Those acts were considered in the case of *City of Dubuque v. Maloney*, 9 Iowa, 450, where it was held that the fee of the streets of a city platted and dedicated by virtue of those acts was, subject to the public easement, vested in the owners of the adjoining lots, and that the city had no right to use the streets for any purpose different from that for which they were originally designed. The same principle was approved in *Cook v. City of Burlington*, 30 Iowa, 94. In *Williams v. Carey*, 73 Iowa, 196, a distinction between cases where the fee to streets is in the abutting property owners and where it is in the city, was noticed. It follows that the defendant in this case could not rightfully acquire from the city nor exercise rights in the street which were not authorized by the dedication of the streets, but are inconsistent with the easement granted to the public. Section 464 of the Code of 1873 gave to cities and towns power to authorize or forbid the location and laying down of tracks for street railways on all streets, alleys, and public places. See, also, *Damour v. Lyons City*, 44 Iowa, 276. It now appears to be settled that an ordinary surface street railway operated by animal power is not a new or additional burden upon the public easement in a street, but one which the right of the public to use the street authorizes for the purpose of'

facilitating public travel. *Citizens' Coach Co. v. Camden Horse Co.*, 33 N. J. Eq. 267 (36 Am. St. Rep. 542); *Attorney General v. Metropolitan R. Co.*, 125 Mass. 515; *Hobart v. Railroad Co.*, 27 Wis., 194; *Texas & P. Ry. Co. v. Rosedale St. Ry. Co.*, 64 Tex. 80; *Elliott v. Railroad Co.*, 32 Conn. 579; *Carson v. Railroad Co.*, 35 Cal. 325; *Merrick v. Railroad Co.*, 118 N. C. 1081 (24 S. E. Rep. 667); *Cincinnati & S. G. Ave. St. Ry. Co. v. Village of Cumminsville*, 14 Ohio St. 523; *Brown v. Duplessis*, 14 La. Ann, 842; *Railroad Co. v. O'Daily*, 12 Ind. 551; *Chicago, B. & Q. R. Co. v. West Chicago St. R. Co.*, 156 Ill. Sup. 255 (40 N. E. Rep. 1008); *Jaynes v. Railway Co.* (Neb.) 74 N. W. Rep. 67; Booth Street Railway Law, section 83.

Streets are designed for public uses, among which are the construction and operation of street railways; and if they are so constructed and operated as not to affect prejudicially the rights of the public, nor to interfere with the proper use of the street by others, no burden not contemplated by the dedication of the street is placed upon it. In such cases the kind of power used in operating the railway is wholly immaterial. It is said, however, that the erection of trolly poles, and the placing of wires upon them, is a permanent obstruction of the street for the benefit of the street railway, which necessarily interferes with the proper use of the street by others. That poles and wires might be so erected and arranged as to have that effect is undoubtedly true, but the mere fact that the spaces they occupy cannot be used for other purposes does not show an improper use of the street. They are designed to aid in the rapid, convenient, and economical transportation of persons from place to place, and thus to facilitate the use of the street by the public for whom it was intended. It is true that some authorities hold that the erection and maintenance of poles in the streets do cast a burden

upon the street which it was not intended to bear. *Jaynes v. Railway Co.*, *supra*, and cases therein cited. But the greater weight of authority appears to sustain the conclusion which we reach.    *Taggart v. Railway Co.*, 16 R. I. 669 (19 Atl. Rep. 326); *Halsey v. Railway Co.*, 47 N. J. Eq. 380 (20 Atl. Rep. 859); *Lockhart v. Railway Co.*, 139 Pa. St. 419 (21 Atl. Rep. 26); *Louisville Bagging Mfg. Co. v. Central Pass. Ry. Co.*, 95 Ky. 50 (23 S. W. Rep. 592); *Railway Co. v. Mills*, 85 Mich. 634 (48 N. W. Rep. 1007); *Chicago, B. & Q. R. Co. v. West Chicago St. R. Co.*, 156 Ill. Sup. 255 (40 N. E. Rep. 1008); *Cumberland Telegraph & Telephone Co. v. United Electric Ry. Co.*, 93 Tenn. Sup. 492 (29 S. W. Rep. 104); Crosswell Electricity, section 108, 109, 182, 183; Booth Street Railway Law, section 83.    It follows from what we have said that an abutting lot owner has no sufficient ground to complain of the erection and maintenance of street railway poles in the street in front of his premises if they are properly placed, and this is true whether he owns the fee of the street or not.

Our attention is called to section 1324 of the Code of 1873, as amended by chapter 104 of the Acts of the Nineteenth General Assembly, which relates to the erection of telegraph and telephone poles along the highways of the state, and to section 1325 of the Code of 1873, which provides for the payment of damages caused by setting poles in private grounds, but we do not find anything in these sections to conflict with what we have said.    It has been held in some cases that the erection of telegraph and telephone poles in streets imposes a new burden, because they do not in any manner aid in the use of the street by the public; but, as no question of that character is involved here, we refrain from expressing any opinion in regard to it.

II.    It is the duty of a street-railway company to so construct and operate its railway as not to interfere

unnecessarily with the right of abutting property owners to use and enjoy their property. *Cadle v. Railroad Co.*, 44 Iowa, 14; Crosswell Electricity, 85. A private individual may maintain an action for relief from injury to himself or his property if the injury be separate and distinct from that which affects the general public. *Churchill v. Water Co.*, 94 Iowa, 89. The petition in this case alleges, and the demurrer admits, that the plaintiffs have sustained serious injury from the placing and maintaining of the pole in its present location, and that the injury will continue if the pole be not removed. To show this more clearly, we set out somewhat more fully than we have already done the substance of averments contained in the petition. In addition to the platting of the town, the location of the property in question, and the adoption by the defendant of the trolly system, the petition alleges that the plaintiffs have since the year 1892, owned and occupied as a homestead the premises described; that the defendant erected in that part of the street appurtenant to their property, and in front of their dwelling, a pole twenty or more feet in height, used in supporting its trolley wire, and similar poles at intervals on each side of the street; that the poles so erected were connected by cross wires to which the trolley wire was attached; that it was not necessary to place a pole in front of the plaintiff's dwelling house, nor on that part of the street appurtenant to their premises; that the pole on the opposite side of the street to which the one in question is attached is from four to six feet further north than is the one in question, and, had the latter been placed three feet further north than is the one to which it is attached, it would still have been in front of the plaintiff's lot, but not at a place where it would have damaged the plaintiff's premises to such an extent as to be complained of; that the pole in question

is a nuisance and an obstruction to the enjoyment by the plaintiffs of their premises and homestead; that it was placed where it is, not because of any necessity, but to annoy the plaintiffs, and to injure and depreciate the value of their property, and that it had had that effect; that, before it was placed where it is, the plaintiffs protested against its erection there, and, after its erection, offered to pay the defendant the cost of moving it to a point near the north line of their property, where they would not object to it, but that defendant declined to accept the offer; that the plaintiffs have been greatly damaged by the placing of the pole where it now is, and will continue to suffer such damage until it is removed; and that they have not been in any manner compensated for such damage. Some of the averments of the petition are immaterial, but we are required to determine whether a cause of action is stated in the petition. If it is, the immaterial matter and the statement of legal conclusions may be disregarded. Section 2646 of the Code of 1873 required the petition in a civil action to contain "a statement of the facts constituting the plaintiff's cause of action," and the petition was demurrable if the facts stated in the petition did not entitle the plaintiff to the relief demanded. Section 2648. It is well settled that, under these provisions, ultimate facts only, and not evidence of them, are to be stated in the petition. *De Lay v. Carney*, 100 Iowa, 687; *Robinson v. Berkey*, 100 Iowa, 136. In *Luse v. City of Des Moines*, 22 Iowa, 590, it was said of a statement in the petition that the defendant "fixed and established a grade for Second street, as it was lawfully authorized to do"; that it was an averment of an ultimate fact; and that it was not necessary for the petition to show how the grade was established. In *Brown v. Kingsley*, 38 Iowa, 220 (an action for seduction), it was said that the ultimate fact was the fact of seduction, and that it was not necessary

to state in the petition the "acts made use of to deceive and mislead," nor certain other facts, as they were merely evidence of the ultimate fact.  In *Grinde v. Railroad Co.*, 42 Iowa, 376, a petition which alleged that the "defendant, by its agents and servants, did run and manage one of its engines in such a grossly negligent and careless manner that the same ran against and over" a cow of the plaintiff which had casually strayed upon the track of the defendant, was held to be sufficiently specific, and it was said: "It is not allowable to plead mere abstract conclusions of law, having no element of fact.  They form no part of the allegations constituting a cause of action; but if they contain the elements also of a fact, construing the language in its ordinary meaning, then force and effect must be given to them as allegations of fact;" and that to plead more than the ultimate fact would be to plead the evidence, which is not allowable.  See, also, *Byington v. Robertson*, 17 Iowa, 562; *O'Conner v. Railway Co.*, 83 Iowa, 105; *Winter v. Railway Co.*, 80 Iowa, 443.  Section 2655 of the Code of 1873 provided that an answer might contain "a statement of any new matter constituting a defense."  In Kendig v. Marble, 55 Iowa, 386, which arose under that provision, the foreclosure of a mortgage on account of a judgment rendered by confession was asked.  The answer alleged "that the confession of judgment was adopted as a fraudulent device, and is such to aid the plaintiff in evading the statute against usury, the plaintiff well knowing that the contract was usurious; that this defendant believed, at the time of the execution of the same, it was only for the amount due, without usury, as before stated."  It was held by this court that a sufficient defense was pleaded, and that if a conclusion of law, and not of fact, was set out, the answer should have been assailed by a motion for a more specific statement; that, "if it was sufficiently

explicit to enable the plaintiff to demur to it, there can be no doubt that it was fully understood and disclosed the defense intended to be made. This was all that could have been required upon the consideration of the demurrer."

The petition in this case states that the pole in question was placed in front of the property of the plaintiffs without necessity therefor, to annoy them, and to injure and depreciate the value of their property; that it is an obstruction to the enjoyment by them of their property; that it has depreciated the value of that property, and caused great damage to the plaintiffs, and will continue to cause such depreciation and damage if not removed; and that they have not not been compensated for the damages received. Applying the rule of the statutes and authorities cited, we conclude that the statements of the petition are of ultimate facts, which show a cause of action, although it may be true that a motion for a more specific statement as to the manner and extent of the obstruction and its effect might have been required had it been asked. But the ultimate fact was the unnecessary obstruction of the use and enjoyment of the plaintiffs' property, to their substantial damage; and that the petition showed. We do not understand the appellee to question this if it be true that the pole in question may have been so placed and maintained as to give to the plaintiffs a right of action. If the plaintiffs can prove the averments of their petition, they might recover damages for the injuries sustained; but they are not compelled to resort to that remedy. If the location of the pole is not only injurious, but unnecessary, they may have recourse to this action for the removal of the pole. *Richards v. Holt*, 61 Iowa, 533; *Gribben v. Hansen*, 69 Iowa, 255; *Harbach v. Railway Co.*, 80 Iowa, 593.

We must not be understood as holding that a property owner may dictate the location of poles in front of his premises, nor that he may recover damages, however trivial, which may be caused by their location. The railway company has the right to so place its poles as to secure the best results for its railway, provided that it so places them as not to cause any unnecessary injury. The injurious consequences which it must guard against are those of a substantial character. The placing of poles in front of property is seldom desired by the property owner, and may in some slight degree interfere with the use of his property, as by obstructing the view from it; but for such injury alone he would rarely, if ever, be entitled to relief. The placing of a pole in a walk or roadway, however, or in front of and near to an important window, if the pole could as well be placed elsewhere, might afford ground for relief. But we cannot undertake to lay down general rules which would govern all cases. Each, of necessity, must be decided according to its own facts. It follows from what we have said that the district court erred in sustaining the demurrer, and its judgment is REVERSED.

DEEMER, C. J. (dissenting).—I do not think the petition states a cause of action, and I dissent from the second paragraph of the opinion. I especially dissent from the doctrine that a pole placed in front of a window is a nuisance. The doctrine of ancient lights does not obtain in this state. I am authorized to say that Mr. Justice WATERMAN, joins in this dissent. ·