BANKER'S MUTUAL CASUALTY Co., Appellant, v. FIRST NATIONAL BANK OF COUNCIL BLUFFS, Iowa, Appellee.

**Insurance against loss by burglary:** STATUTES CONSTRUED. The provision of Section 1695 of McClain's Code, authorizing domestic insurance companies to insure houses, buildings and all other kinds of property against loss or damage by fire or "other casualty," is construed to authorize insurance against loss by burglary.

**Construction of statutes.** Where the language of a statute is so indefinite as to call for construction the interpretation placed thereon by the executive and administrative departments of the state, charged with the duty of applying and enforcing it, will be given much weight by the courts.

**Insurance corporations:** ULTRA VIRES. Where an insurance company has been duly organized and authorized by the state to transact a particular line of business, an assured, in an action upon a premium note, cannot defend on the ground that its act in writing the policy in consideration for which the note was given was *ultra vires.*

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

MONDAY, SEPTEMBER 24, 1906.

THE opinion states the case. *Reversed.*

*George W. Bowen* and *Sullivan & Sullivan,* for appellant.

*N. T. Guernsey,* for appellee.

WEAVER, J.—The plaintiff corporation was organized December 25, 1895. By its articles of incorporation, the nature of the business it proposed to transact was stated as follows: " Article 3. The general nature of the business to be transacted by this company shall be the insurance of the property of its members, and no others, against loss or damage by casualty and to make all kinds of insurance on goods, merchandise, and other property in the course of transportation whether on land or on water, or any vessel or boat wherever same may be; and this corporation is especially empowered to insure against damage by the casualty of burglary or robbery and the loss or destruction of monies, securities and other valuables while in the course of trans-. portation by mail or express." Thereafter on December 1, 1896, after an examination into the business of the company, the auditor of the state of Iowa issued to said corporation a certificate to the effect that it had filed with said officer a sworn statement of its condition in accordance with the provisions of chapter 4, title 9, of the Code of 1873, regulating burglary insurance, that said statement showed that the company had complied with the laws of the state relating to insurance, and was therefore authorized to transact its appropriate business of burglary insurance in accordance with law until January 31, 1897. During the period covered by this certificate the plaintiffs issued to the defendant bank a policy of insurance against loss by burglary, in consideration of which policy and contract of insurance said

bank executed and delivered to plaintiff its promissory note for the sum of $300 payable at such times and in such installments as might be assessed by the company's board of directors without interest — the assessment not to exceed $60 in any one year.  On this note defendant paid December 22, 1896, the sum of $60, and on December 31, 1897, the sum of $60, and on January 27, 1899, the note was further credited and indorsed by "rebate" in the sum of $97.50.   Since the last-mentioned date assessments have been duly made for the remainder of $82.50 represented by said note, but the defendant has neglected and refused to pay the same.  Action at law having been brought to cover the last-named sum and petition being filed alleging the facts aforesaid the defendant demurred thereto on the following grounds:   (1) Because at the time the policy of insurance was issued the plaintiff had no power or authority to insure against loss by burglary.   (2) Because the note sued upon is without consideration and void, the plaintiff having no authority to issue the policy for which the note was given; and because the policy was null and void and was incapable of enforcement should any loss occur thereunder.   The demurrer was sustained by the trial court, and the plaintiff electing to stand upon its petition and refusing further to plead or amend, judgment was entered upon the demurrer, and plaintiff appeals.

The appeal as discussed by counsel presents the following questions for our consideration:

I.   Did the statutes of this state at the date of the policy issued to the appellee permit a domestic corporation to engage in the business of insurance against loss by burglary?

The trial court seems to have answered this

1. INSURANCE
AGAINST LOSS
BY BURGLARY:
statutes con-
strued.

inquiry in the negative, and that position is maintained by counsel for appellee.  At the time in question, the statute (McClain's Code, Section 1695) authorized companies organized under the laws of this state to make insurance contracts as follows:

(1) To insure houses, buildings, and all other kinds of property against loss or damage by fire or other casualty, and to make all kinds of insurance on goods, merchandise, or other property in the course of transportation, whether on land or on water or any vessel or boat, wherever the same may be. (2) To make insurance on the health of individuals, and against the personal injury, disablement, and death, resulting from traveling, or general accidents by land or water. (3) To insure the fidelity of persons holding places of private or public trust. (4) To receive on deposit and insure the safekeeping of books, papers, moneys, stocks, bonds, and all kinds of personal property. (5) To insure horses, cattle, and other live stock against loss, or damage by accident, theft, or any unknown or contingent event whatever which may be subject of legal insurance; to lend money on bottomry or respondentia, and to cause itself to be insured against any loss or risk it may have incurred in the course of its business, and upon the interest which it may have in any property, by means of any loan which it may have made on mortgage, bottomry or respondentia, and generally to do, and perform all other matters and things proper to promote these objects. But no company shall be organized to issue policies of insurance for more than one of the above five mentioned purposes, and no company that shall have been organized for either one of said purposes, shall issue policies of insurance for any other; and no company organized under this chapter, or transacting business in this state, shall expose itself to loss on any one risk or hazard to an amount exceeding 10 per cent. on its paid-up capital, unless the excess shall be reinsured by the same in some other good and reliable company. But the restrictions as to the amount of risk any company shall assume shall not apply to any companies organized to guarantee the fidelity of persons in places of public or private trust, nor to companies that receive on deposit and guarantee the safekeeping of books, papers, moneys, and other personal property.

This section was amended by chapter 29, Acts of the 24th General Assembly authorizing casualty insurance for the benefit of employers of labor. By chapter 32, of the Acts of the 25th General Assembly, the act of the 24th General Assembly above mentioned was repealed and substi-

tuted and made to include insurance against personal injuries generally as well as indemnity against the liability of employers on account of the acts or omissions of their employés. Later, and after the issuance of the policy in controversy, chapter 60, of the acts of the 28th General Assembly, was enacted amending Code, section 1709 (which corresponds with McClain's Code, section 1695), and authorizing, in express words, insurance against loss by burglary. The last-mentioned amendment having been enacted since the date of the note in suit is of no material bearing upon the issue here presented except as it may be regarded in the nature of a legislative recognition of the need of the authority there given for this class of insurance.

It is to be admitted that the insurance statutes which we have cited as being in force at the date of the organization of the appellant company contain no provision which expressly and in so many words authorized insurance against loss by burglary, and if such authority then existed it must be drawn or inferred from the general terms and provisions embodied in those enactments. For the purposes of this case we may also admit the entire correctness of the appellee's contention (1) that a corporation may lawfully exercise only such powers as are expressly or impliedly granted by statute; and (2) that as between a corporation and the public, any reasonable doubt as to the granting of a corporate power will be resolved in favor of the public, but these propositions being granted and given due weight in reaching our conclusion we have still to ask whether the power to carry on the business of burglary insurance is not fairly to be implied from the statute as it stood in the year 1896 ?

It is to be observed that there is no express prohibition of such business. The title of the act is broad enough to cover insurance of any kind. The opening section (McClain's Code, section 1685), which is the keynote or introduction to the provisions which follow, prescribes how " any number of persons " (may) " associate themselves together for the

purpose of forming an insurance company or for any other purpose than life insurance." Section 1695, already quoted, undertakes to prescribe five different classes or kinds of insurance in which such associations may engage. If this chapter is broad enough to permit burglary insurance, it must be found in subdivision 1 of this section when read in the light of the entire insurance statute of which it forms a part. The subdivision authorizes the insurance of houses, buildings, and all other kinds of property against loss by fire or other casualty. As will be noticed the effect of the statute, as applied to this case, will be determined very largely on the scope of the meaning we may give to the words " other casualty." " Casualty " and " casualty insurance " are words of quite frequent use, yet it cannot be said that their definition has been very accurately settled by the courts. Strictly and literally " casualty " is perhaps to be limited to injuries which arise solely from accident without any element of conscious human design or intentional human agency; or as it is sometimes expressed, inevitable accident, something not to be foreseen or guarded against. Standard Dictionary. But in ordinary usage, " casualty " like " accident " is quite commonly applied to losses and injuries which happen suddenly, unexpectedly, not in the usual course of events, and without any design on part of the person suffering from the injury. Nor does the fact that the conscious or intended act of some other person produces it take from such injury its character as an accident or casualty. *Richards v. Ins. Co.,* 89 Cal. 170 (26 Pac. 762, 23 Am. St. Rep. 455); *Ins. Co. v. Crandall,* 120 U. S. 527 (7 Sup. Ct. 685, 30 L. Ed. 740); *Schneider v. Ins. Co.,* 24 Wis. 28 (I Am. Rep. 157).

In *State ex rel.* v. *Investment Co.,* 48 Minn. 110, (50 N. W. 1028), " casualty insurance " is said to have " a well-defined meaning as insurance against loss through accidents resulting in bodily injury or death." But it is perfectly apparent that the insurance against casualty provided for

by our State as above quoted has no reference whatever to injuries or losses of this class for it is expressly treating of property losses as distinguished from losses by personal injury.  It comes rather within the definition of the phrase which is given by the Supreme Court of Massachusetts in *Employers' Liability Assur. Corporation* v. *Merrill,* 155 Mass. 404 (29 N. E. 529), where, in differentiating between accident companies and casualty companies, it classes under the latter head companies insuring against the explosion of steam boilers and breaking of plate glass.  A casualty by which a loss of property is occasioned is not necessarily restricted to a confflagration by which the property is consumed, and we can see no reason why, in the absence of other restrictive provisions in the statute, it may not as well include lightning, tornado, flood, hail, or other force or violence by which such property is injured, destroyed, or lost without the agency or design of the owner.

But counsel say that even if the word " casualty " standing alone is broad enough to include loss by burglary yet under the rule of *ejusdem generis* its scope must be restricted to casualties of like kind with those specifically mentioned in that connection, and that under this rule the words " other casualty ". having been preceded in the same section by reference to loss or damage by fire, they must be read as meaning other *like* casualty.  Of the soundness of the general rule of construction here appealed to, by which when specific and general terms are both employed in the same connection the general terms are held to take their meaning from the specific, there can be no doubt; but it is never used to render words meaningless or to defeat a plainly expressed intent.  See *State* v. *Broderick,* 7 Mo. App. 19. For instance, to interpret the statute as if it read " To insure property against loss or damage by fire or other loss or damage by fire " would be to perpetrate an absurdity.  Indeed, unless we treat the general words " or other casualty " as intended to include other risks than those already mentioned

in the specific reference to " loss or damage by fire," then they mean nothing, and add nothing whatever to the idea which would be expressed by the sentence with these words entirely omitted. *Borough* v. *Geer,* 117 Pa. 207 (11 Atl. 415); *Riggs* v. *State,* 75 Tenn., 475. Such a holding would violate the cardinal rules of construction and deny to the language employed the meaning and effect which it bears in common and approved usage. " Other " is also frequently used in an unrestricted sense — not limited by the rule of *ejusdem generis. Flower* v. *Witkovsky,* 69 Mich., 371 (37 N. W. 364); *People* v. *Stone,* 9 Wend. (N. Y.), 182; *Hall* v. *State,* 48 Wis., 689 (4 N. W. 1068). The likeness which the general expression must bear to the specific words employed in order to apply the rule of *ejusdem generis* to the present case would seem to be likeness in the loss or damage to be insured against rather than in the causes producing it. The specific reference to loss or damage by fire is all inclusive so far as that cause is concerned, and loss or damage by other casualty must of necessity refer to injuries which are referable to some other cause. *Brown* v. *Corbin,* 40 Minn., 508 (42 N. W. 481). Property injured by fire becomes a partial or total loss, and a casualty other than fire which produces like loss or injury is, we think, a like casualty within the meaning of the statute.

That the rule relied upon by appellee necessarily permits some latitude in the interpretation of statutes is well illustrated by reference to the first clause of the very provision we are here considering. The power there granted is " to insure houses, buildings, *and all other kinds of property,"* etc. We feel very certain that counsel would not insist that the rule of *ejusdem generis* operates to restrict the corporation to insurance of structures similar in character to " houses and buildings." Indeed, if the power thus granted is not broad enough to authorize the insurance of household goods, stocks of merchandise, grain in stack, and generally whatever comes fairly within the term " property,"

and is liable to " loss or damage by fire or other casualty," then the statute falls far short of the commonly accepted meaning as well as the effect which has always been given it in actual practice.   See, also, *Brown v. Corbin*, 40 Minn., 508 (42 N. W. 481); *Kelly v. People*, 132 Ill., 363 (24 N. E. 56); *Pooler v. State*, 97 Wis. 627 (73 N. W. 336); *Hyde v. Hyde*, 64 N. J. Eq. 6 (53 Atl. 593); *Grissell v. R. R.*, 54 Conn. 447 (9 Atl. 137, I Am. St. Rep. 138); *Winters v. Duluth*, 82 Minn. 127 (84 N. W. 788); *Gas Light Co. v. R. R. Co.*, 91 Iowa, 470.

This reference to the practical construction which has been placed upon the statute brings us naturally to the consideration of another rule which should not be overlooked. 2. CONSTRUCTION OF STATUTES. Even if, as an original question, the construction which we have placed upon the statute were open to doubt, yet if the language employed is ambiguous or lacking in clearness and definiteness of expression (and this we think must be conceded), then the contemporaneous construction placed thereon by the executive and administrative authorities of the state who are charged with the duty of applying and enforcing it is highly persuasive of the correctness of such interpretation.   True, it is not permitted to control a clear and specific legislative enactment or to defeat a plainly expressed intent but where the language of the act is open to construction at all it is entitled to much weight.   *Packard v. Richardson*, 17 Mass., 143 (9 Am. Dec. 123); *Bruce v. Schuyler*, 9 Ill., 221 (46 Am. Dec. 447); *United States v. Moore*, 95 U. S., 760 (24 L. Ed. 588); *Hahn v. U. S.*, 107 U. S., 406 (2 Sup. Ct. 494, 27 L. Ed. 527); *Five per Cent. Cases*, 110 U. S., 485 (4 Sup. Ct. 210, 28 L. Ed. 198); *Brown v. United States*, 113 U. S. 571 (5 Sup. Ct. 648, 28 L. Ed. 1079); *U. S. v. Hill*, 120 U. S., 182 (7 Sup. Ct. 510, 30 L. Ed. 627); *U. S. v. Johnston*, 124 U. S. 263 (8 Sup. Ct. 446, 31 L. Ed. 389); *Montana v. Clark* (C. C.), 42 Fed., 629; *Hewitt v. Schultz,*

7 N. D., 611 (76 N. W. 230) and cases cited in 26 Am. & Eng. Ency. Law (2d Ed.) 622.

Now, the statute in which the section under consideration is found provides that a corporation organized to transact an insurance business shall, before entering thereon, make a certificate setting forth the name it has adopted, the amount of its capital stock, its principal place of business, the object or business for which it is formed, and forward the same to the Auditor of State who shall submit it to the Attorney General for examination, and if it shall be found by the Attorney General to be in accord with the provisions of the statute and not in conflict with the Constitution and laws of the United States or of the State of Iowa he shall make a certificate of the fact and return it to the Auditor of State, and when the certificate of the company shall have received the approval of both the Attorney General and the Auditor of State the same shall be recorded, and when these preliminaries have been complied with and the company has otherwise completed its organization as required by law, it is clothed with authority " to carry on the business of insurance as named in such certificate of incorporation." McClain's Code, section 1685.

The petition to which demurrer was sustained shows that by its articles of incorporation the appellant company was organized to insure the property of its members against loss or damage by casualty or burglary or robbery and the loss or destruction of moneys, securities, and other valuables while in course of transportation by mail or express. It is further shown that for the year 1896 the Auditor of State issued to the appellant a certificate in the following form:

State of Iowa.
Office of Auditor of State.

It is hereby certified, that there has been filed in this office a sworn statement showing the condition of the Bankers' Mutual Casualty Company, located at Des Moines in the State of Iowa, on the first day of December, A. D.

1896, in accordance with the provisions of chapter 4 of title IX of the Code of Iowa, A. D. 1873, regulating burglary insurance companies, that said statement shows that said company has complied with the laws of the State relating to insurance.

Authority is therefore given to the above named company to transact its appropriate business of burglary insurance in this State, in accordance with the laws thereof, until the thirty-first day of January, A. D., 1897.

In testimony whereof, I have hereunto set my hand and affixed my seal of office at Des Moines, this second day of December, A. D. 1896.

[Signed]                         C. G. McCARTHY,
[Seal.]                            Auditor of State.

While this certificate was in force the policy and note in controversy were executed and delivered. It is not expressly alleged that the Attorney General passed upon the showing made by the corporation, but the law having made it the duty of the auditor to submit it to him before giving it his own approval, there is a presumption that the duty was performed and that the chief law officer of the State examined and approved the appellant's organization and plan of business as being in accordance with the statute. It thus appears that the officers, to whom was especially committed the duty of enforcing the statute, interpreted it as permitting burglary insurance, and by their approval gave the company at least apparent authority to transact such business. So far as we know that interpretation and authority remained unchallenged for a period of ten years and until the objection was raised by the demurrer in this action. The appellee has held the policy issued to it by the appellant for the full period of insurance, and has from time to time paid the accuring assessment without objection or protest so far as the pleadings disclose until the final call on which this suit is based. While not disclosed by the record, it is at least probable that much other business of this kind has been transacted by this and other companies doing a like business

on the strength of this interpretation of the law by the State officers to whom its administration was committed; and much less injustice is likely to be accomplished by adhering to that interpretation than by departing therefrom at this late date.

II. Assuming as an original proposition that appellee's construction of the statue is correct, does it necessarily follow that the policy issued by the appellant was void and the note in suit without any valuable consideration? This question we are constrained to answer in the negative. For the purposes of the organization of an insurance corporation with authority to do business in this State, the interpretation of the statute governing the same and the determination of the validity of such organization and its plan of business are committed primarily to the Attorney General and Auditor of State. Having adopted articles of incorporation expressly assuming to transact the business of burglary insurance, and having secured from the proper authority a finding that such business was authorized by the statute and that its organization was sufficient for such purpose, no court would permit it to escape liability on a contract issued by such authority on the plea of *ultra vires*. It is a plea not favored in law and is never sustained save where the most persuasive considerations of public policy require it. *Wright v. Hughes,* 119 Ind. 324 (21 N. E. 907, 12 Am. St. Rep. 412); *Field v. B. and L.,* 117 Iowa, 201; *Church v. Johnson,* 93 Iowa, 544; *Kennedy v. Bank,* 101 Cal. 495 (35 Pa. St. 1039, 40 Am. St. Rep. 69). A corporation having received the benefit of a contract is estopped to plead want of power to enter into it. *Rehberg v. Surety Co.,* 131 Mich. 135 (91 N. W. 132); *Butterworth v. Kritzer,* 115 Mich. 1 (72 N. W. 990); *Opera House Co. v. Mercantile Ass'n,* 59 Kan. 778 (53 Pac. 761); *Wright v. Pipe Line Co.,* 101 Pa. 204 (47 Am. Rep. 701); *Main v. Casserly,* 67 Cal. 127 (7 Pac. 426); *Bullen v. Trading Co.,* 109 Wis. 41 (85 N. W. 115). In the last-

3. INSURANCE CORPORATIONS: *ultra vires.*

cited case the court says: "If a corporation offends against the law of its creation by a transaction so far consumated that it has become possessed of the funds thereof, it cannot shield itself from the consequences by the doctrine of *ultra vires*. It may be punished by the State against which the offense was committed, but it is powerless to add to the wrong by invoking the doctrine of *ultra vires* to perpetuate a fraud upon an innocent member of society." This is a wholesome doctrine both in law and in morals, and under its application had the appellee sustained a loss within the terms of its policy, the appellant could not have successfully interposed the plea of *ultra vires*. It cannot be said, therefore, that the premium note was without consideration. It is true precedents may be found which give the doctrine of *ultra vires* a much broader application than we here accord to it, but our conclusions are supported by the clear weight of modern authority.

It follows from what we have said that the demurrer to the petition should have been overruled.

The judgment must therefore be reversed, and the cause remanded for further proceeding in harmony with this opinpinion.— *Reversed.*