STATE OF IOWA ex rel. MAURICE V. PEW, Commissioner of Insurance, et al., Appellants, v. INDEPENDENT ORDER OF FORESTERS, Appellee.

No. 44764.

JUNE 20, 1939.

Fred D. Everett, Attorney General, and John E. Mulroney, Asst. Attorney General, for appellants.

Stipp, Perry, Bannister & Starzinger, for appellee.

MILLER, J.—This is an action at law. The petition of the State alleges that appellee is a fraternal beneficiary association, organized under the laws of the Dominion of Canada, with its principal place of business at Toronto, and that it is authorized to do and has been doing business as such association in the State of Iowa; that in 1936 appellee's business in Iowa amounted to $55,688.12; that a gross premium tax of two and one-half per cent of said sum, or $1,392.20, was demanded of appellee by the State and payment thereof refused. The prayer of the petition was for judgment for the amount of the tax claimed and for costs.

Appellee's answer is in two divisions. Division I constitutes an answer to the petition of the plaintiffs. It contains a general denial of all facts stated in the petition except those admitted by the answer. Appellee admits that it is a fraternal beneficiary order, organized under the laws of the Dominion of Canada with its principal place of business at Toronto, and that it was authorized to do and did business in Iowa in 1936. It alleges that since 1896, in obedience to section 10, chapter 21, Acts of the 26th General Assembly, now section 8822 of the Code, it filed annual reports and secured annual licenses to do business in Iowa; that it ceased issuing certificates to new members in Iowa in June 1937, and at that time transferred its Iowa members to its camp at Buffalo, New York. It admits the demand of the State for a gross premium tax on its 1936 business, and its refusal to pay the same. It asserts, as grounds for such refusal, that it had developed a large business in Iowa at labor and expense, which represents an investment of substantial worth; that it complied with the Iowa statutes in the course of such development; that at no time except in 1936 and 1937 was a gross premium tax demanded of it by the State; that, under the law, it was exempt from such a tax; that the Iowa Insurance Department had so construed the statutes from 1897 to 1936, and during that time there has been continuous legislative acquiescence in such construction; that the State is now estopped and foreclosed from claiming that appellee is liable for such a tax and, to impose such tax on appellee, would violate the 14th Amendment to the United States Constitution and sections 6 and 10 of Article I and section 30 of Article III of the Constitution of Iowa.

In division II of its answer, by way of counterclaim against

the State, the appellee reasserts the allegations of division I with considerable elaboration, which it is not necessary to set forth herein. Appellee also alleges a demand in March 1936, for a gross premium tax of $1,511.55 on its 1935 business in Iowa, and the payment of the same under protest, reserving the right to contest the validity of such tax. Appellee alleges that the tax was wrongfully exacted and prays for judgment for the amount so paid and costs.

In the State's answer to appellee's counterclaim, it admits certain allegations, denies others, and specifically denies that the gross premium tax collected on the 1935 business of appellee was wrongfully exacted. The State prays for dismissal of the counterclaim.

The case was tried to the court, a jury being waived by stipulation of the parties. Most of the facts were stipulated. The findings of fact made by the trial court, all of which have substantial support in the evidence, are as follows: Appellee is a fraternal beneficiary society or order, within the contemplation of section 8777 of the Code, organized under the laws of the Dominion of Canada, with its principal place of business at Toronto; it commenced business as such society in 1890 and entered the State of Iowa in 1892, built up a large business here, acquired large property rights and continued the issuance of certificates to members in Iowa until June 1937, at which time its Iowa members were transferred to a camp or lodge without the state; it complied with chapter 21 of the Acts of the 26th General Assembly, as later codified, continuously until and including the year 1937; no gross premium tax was ever levied or assessed against any domestic fraternal beneficiary society under the laws of Iowa, no gross premium tax was ever levied or assessed against any foreign fraternal beneficiary society other than appellee; appellee was never required to pay a gross premium tax until 1936, when a tax of $1,511.55 was assessed on its 1935 business, and was paid under protest, reserving the right to contest the validity thereof; such tax is the only such tax ever paid by appellee; a license was issued to appellee annually from 1896 to 1935 without any such tax being demanded or paid; on April 1, 1937, a license was issued to appellee without the imposition of any such tax on its 1936 business; the legislature did not amend chapter 335 of Title XVI of the Code of 1935 while in session in 1937.

The trial court's conclusions of law are as follows: that appellee is a foreign fraternal beneficiary order within the meaning of section 1333 of the Code of 1897, carried forward in chapter 335 in the Code of 1935, and as such has been exempt from the payment of a gross premium tax on dues and assessments collected by it from its members residing in Iowa; that, by reason of continuous executive and departmental construction of the statutes, and a legislative acquiescence in such construction for over forty years, the State is now estopped and foreclosed to assert or claim that appellee is liable to pay a gross premium tax on its 1936 business; that to impose such tax would violate the 14th Amendment to the Constitution of the United States and sections 6 and 10 of Article I and section 30 of Article III of the Constitution of Iowa; that the collection of the gross premium tax in the sum of $1,511.55 on appellee's business in Iowa for 1935 was wrongfully exacted, and that appellee is entitled to recover the same.

Pursuant to such findings of fact and conclusions of law, the court dismissed the State's petition, and entered judgment in favor of appellee for $1,511.55 on its counterclaim and for costs. From such judgment the State has appealed to this court.

The briefs and arguments submitted herein discuss at length many interesting questions. However, in view of the fact that our decision on one of the questions presented is controlling as to the result of this appeal, we do not undertake to decide the other questions that are argued.

The position of the State is that fraternal beneficiary societies, doing business in Iowa, fall within three classifications: first, those organized under the laws of Iowa; second, those organized under the laws of any state of the United States, other than Iowa; third, those organized under the laws of any state or nation, other than the United States.

The record shows that no gross premium tax has been exacted from any such society, organized under the laws of Iowa. As appellee is not organized under the laws of Iowa, the propriety of any such tax is not presented for our decision. However, it is interesting to note in passing that this court has not only recognized that a fraternal beneficiary society, organized under the laws of Iowa and doing business in this state, is not subject to a gross premium tax, but has also held that

the amounts paid on certificates, originally issued by such society, are not subject to a gross premium tax after the society has been reorganized as an old line mutual life insurance company. Yeomen Mut. Life Ins. Co. v. Murphy, 223 Iowa 1315, 1323, 275 N. W. 127.

Similarly, the propriety of a gross premium tax on the Iowa business of a fraternal beneficiary association, organized under the laws of any state of the United States other than Iowa, is not presented for our decision. But it is significant to note that section 7022 of the Code appears to clearly exempt such society from such tax. The attorney general, in his argument, concedes as much, and a three judge federal court, sitting in Iowa, has expressly so held. Sovereign Camp, W. O. W. v. Murphy, D. C., 17 F. Supp. 650; Mod. Woodmen of Am. v. Murphy, D. C., 17 F. Supp. 655.

The sole question, presented for our decision, is whether the statutes of Iowa impose a gross premium tax upon a fraternal beneficiary society, doing business in Iowa, and organized under the laws of a state or nation, other than the United States. The appellee is such a society. Under the record herein, it is stipulated that the appellee is the only society, falling within this classification, that is now operating or ever has heretofore operated in Iowa as a fraternal beneficiary society. Were we to sustain the position of the State herein, and also follow the decisions above referred to, the appellee would be the only fraternal beneficiary society operating in Iowa that would be compelled to pay a gross premium tax. Accordingly, we have the unique situation of being called upon to construe statutes in so far as they affect only the parties to this litigation. Because of this fact, the question presented by the executive and departmental construction of the statutes involved, with which the legislature has acquiesced for over forty years, has a peculiar significance.

In the case of New York Life Ins. Co. v. Burbank, 209 Iowa 199, 205, 216 N. W. 742, 744, in passing upon the effect of legislative acquiescence in departmental construction of gross premium taxes, exacted of life insurance companies who had declared and paid dividends to their policy holders, we state:

"The quest is for the legislative purpose. By section 807 of the Code of 1873, every insurance company doing business in

the state was required to pay 'as taxes, two and one-half per cent of the gross amount of premiums received in this state during the. preceding year.' The evidence is that, since 1872, the administrative officers of the state have construed the law as requiring the computation of the tax on the gross premiums received, computed at the contract rates, without any deductions for dividends or surrender values. Plaintiff, as well as the other companies, has been paying the tax accordingly during all these years, without demur. A settled practice under which the state has collected and the companies have paid such important amounts for so long a time ought not to be disturbed without compelling reasons therefor. Executive construction should be given much weight. Bankers Mut. Cas. Co. v. First Nat. Bank, 131 Iowa 456, 108 N. W. 1046; Burk-Waggoner Oil Assn. v. Hopkins (D. C.), 296 F. 492, and cases cited. The statute was re-enacted in the Code of 1897, section 1333. It is a fair presumption that the legislature, by the re-enactment without change of language, was satisfied with such construction, and intended that it should continue. Komada & Co. v. United States, 215 U. S. 392, 30 S. Ct. 136, 54 L. Ed. 249.''

Again, in the case of John Hancock Mut. Life Ins. Co. v. Lookingbill, 218 Iowa 373, 386, 253 N. W. 604, 611, in passing upon legislative acquiescence in a departmental construction that an insurance company, that had been issued a permit to do business in Iowa by the Commissioner of Insurance, was not required to secure a permit from the Secretary of State as a foreign corporation, we state:

''Courts have always given great weight to the construction of statutes of this kind by the executive department of the state, whose duty it is to enforce them. This record shows, without any dispute, by the testimony of the deputy secretary of state in charge of the corporation department, that no secretary of state has ever demanded the appellee to obtain a permit from him, and no executive officer in the state of Iowa has ever attempted to collect any penalty for failure to obtain such permit. He even went further than this and testified that the secretary of state's office interpreted the corporation laws of Iowa as requiring no permit from the secretary of the state to be issued to a foreign life insurance company, licensed by the insurance commissioner, before purchasing Iowa mortgages, foreclosing

them, and operating the foreclosed real estate. It is the duty, under the law of this state, for the executive officers of this state, if any foreign corporation fails to comply with chapter 386, to see that the officers of said corporation are duly punished, as they are guilty of a misdemeanor, and that a penalty of $100 per day is to be paid to the state. And yet, in this case, the record shows that none of the officers charged with that duty have ever made any effort to inflict the penalties provided for in these statutes on any foreign life insurance company that has secured a permit from the insurance commissioner, and for the reason that, in their judgment, foreign life insurance companies that have a permit from the insurance commissioner, do not come under chapter 386. The reason that this construction is so important is because it shows the intent of the legislature. The legislature is presumed to know the construction of its statutes by the executive departments of the state, and if the legislature of this state was dissatisfied with the construction which has been placed upon them by the duly elected officials in the past years, the legislature could very easily remedy this situation, as it has the power to pass such legislation, and the only conclusion we can come to is that the legislature must have been satisfied with the construction placed upon the act by the secretary of state.''

The foregoing pronouncements of this court would seem to be controlling under the record made herein. The construction of the statutes, upon which the State relies as imposing a gross premium tax upon appellee, is not free from doubt. Likewise, the statutes, upon which appellee relies as exempting it from the payment of such tax, are not as clearly applicable to the situation as they might well be. Each party presents persuasive arguments in support of its position. The question is a debatable one. The intention of the legislature is not clearly expressed. Its acquiescence in the departmental construction must be considered as strong evidence of its intent.

■ Under the record herein, the annual reports, which appellee filed, showed each year that appellee was organized under the laws of the Dominion of Canada, with its principal place of business in Toronto. The reports showed the extent of its business transacted in Iowa. If the legislature had intended that appellee should pay a gross premium tax, the insurance de-

partment could determine the amount of the tax from appellee's annual reports. From 1897 to 1935, such annual reports were filed, annual licenses were issued, and no gross premium tax was ever demanded. Appellee was clearly justified in believing that no such tax was due. The legislature is presumed to know the construction of its statutes by the executive departments. If it was dissatisfied with such construction, it could very easily remedy the situation. The only conclusion we can reach is that it must have been satisfied with such construction.

We hold that the legislature did not intend to impose a gross premium tax upon the Iowa business of appellee. The result of the judgment of the trial court is in accord with such holding. The judgment is affirmed.—Affirmed.

MITCHELL, C. J., and SAGER, HAMILTON, HALE, STIGER, OLIVER, and BLISS, JJ., concur.