Louisville Bagging Mfg. Co. v. The Central Passenger R'y Co.

CASE 11—PETITION EQUITY—October 24.

# Louisville Bagging Manufacturing Company v. The Central Passenger Railway Company.

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. STREET RAILWAYS—GRANT OF USE OF STREET BY CITY ORDINANCE.
—Where the right to construct and operate a street railway has been granted by resolution or ordinance of the council of a city, in pursuance of authority conferred by act of the General Assembly, the right thus given is as valid and effectual as if conferred directly by the General Assembly.

2. THE OVERHEAD WIRE OR TROLLEY SYSTEM OF OPERATING STREET RAILWAYS BY ELECTRICITY is not so dangerous and does not so obstruct the streets of a city as to authorize the courts to either enjoin or limit the movement of street-cars in that way.

3. THE PLAINTIFFS CAN NOT ENJOIN THE CONSTRUCTION OF A RAILWAY TRACK IN FRONT OF THEIR MANUFACTURING ESTABLISHMENT upon the ground that it will prevent the loading and unloading of vehicles by backing them up to and at right angle with the sidewalk, as this manner of loading and unloading necessarily obstructs the proper use of the street for all other vehicles, and, besides, is forbidden by city ordinance.

THOMAS F. HARGIS FOR APPELLANT.

1. The acts of the Legislature are silent as to what kind or system of electric railroads or electric propulsion is to be used, and in order to destroy the presumption that a dangerous system was not intended to be authorized by the Legislature, the burden is upon the defendant to show that the present system, being a dangerous system, is the only one by which it can use electricity at all for its cars. (Attorney-General v. Gas Co., 7 Ch. D., 217; Judge Taft's Opinion in Telegraph Ass'n v. C. I. P. R'y Co., pp. 24–5.)

2. Legislative power can not be delegated, and, therefore, the Legislature had no power to delegate to the municipality of Louisville authority to grant to the defendant the right to build and operate its railway. (Cooley's Con. Limit., top p. 138, 5th ed.; Auditor v. Holland, 14 Bush, 147.)

3. The Legislature and the courts are jealous of the exercise of corporate powers by corporate bodies, and no act is to be construed as granting corporate authority unless it plainly says so. This doctrine has its cor-

Louisville Bagging Mfg. Co. v. The Central Passenger R'y Co.

relative in the rule that enforces the power to protect citizens from the *occupation* of their lands, or the taking of their property, or invading its possession or use, without just compensation, and then only for a clearly public purpose. (High on Injunctions, sec. 625; Richards v. Des Moines R'y Co., 18 Iowa, 259; Murdock v. Prospect, &c., R. Co., 73 N. Y., 579; Evans v. M. I. & N. R. Co., 64 Mo., 453; White v. L. & N. R. Co., 7 Heisk, 573.)

4. The defendant's single trolley system is a nuisance. As to **what** constitutes a nuisance see Coal Gas Co. v. Freeland, 12 Ohio St., 392; Reinhardt v. Mentasti, 40 Alb. L. J., 490; Crawford v. Rainbow, 44 Ohio St., 279; Railroad Co. v. Carey, 3 Ohio St., 201; Cooper v. Hall, 5 Ohio, 320; Petersdorf's Common Law, vol. 3, p. 550; Cheatham v. Shearon, Swan's Rep. (Tenn.), p. 213; Gates v. Blincoe, 2 Dana, 159; United States Illuminating Co. v. Hugh J. Grant, N. Y. Law J. of Dec. 18, 1889; Opinion of Judge Taft in City and Suburban Telegraph Ass'n v. The Cincinnati Incline Plane R'y Co.

5. A failure to compensate for the right of way, either by contract with the owner, obtaining his consent, or by condemnation, subjects the defendant to an injunction. (High on Injunctions, secs. 622, 632, 635, 638.)

6. As to what is a taking of private property, see Railway Co. v. Rennick, 102 U. S., 180; Pumpelly v. Green Bay Co., 13 Wall., 174; Kemper v. City of Louisville, 14 Bush, 89; Transylvania University v. Lexington, 3 B. M., 7; Lou. & Nash. R. Co. v. Hodge, 6 Bush, 141; Balt. & Potomac R. Co. v. Fifth Baptist Church, 108 U. S., 329; Cooley's Con. Limit., p. 182; Imlay v. Union Branch R. Co., 26 Conn., 249; Eaton v. Boston, &c., R. Co., 51 N. H., 504; Fulton v. Short Route Transfer Co., 85 Ky., 640; Kemper and Wife v. City of Louisville, 14 Bush, 89; L. & F. R. Co. v. Brown, 17 B. M., 775; L. & O. R. Co. v. Applegate, 8 Dana, 290; Cosby v. Owensboro, &c., R. Co., 10 Bush, 289; Hooker v. New Haven, &c., Co., 14 Conn., 146; Roe v. Granite Bridge Co., 21 Pick., 344; Canal Appraiser v. People, 17 Wend., p. 604; Lacklin v. Railroad Co., 31 Mo., 180; Stevens v. Props. of Middlesex Canal, 12 Mass., 466; E., H. & N. R. Co. v. Grady, 6 Bush, 145; Cooley's Con. Limit., 5th ed., pp. 546–7.

7. Equitable jurisdiction and injunction are concurrent with the common law right of action for a nuisance that specially damages the citizen. (High on Injunctions, secs. 589, 623; Curran v. Shattuck, 24 Cal., 427; Balt. & Potomac R. Co. v. Fifth Baptist Church, 108 U. S., 329; Gardner v. Village of Newberg, 2 John Ch'y, 162; Irvin v. Dixons, 9 How., 110; Miller v. Mayor of N. Y., 103 U. S., 385.)

HUMPHREY & DAVIE FOR APPELLEE.

1. The street railway company had express authority from the Legislature, and from city ordinances passed by legislative authority, to construct and operate its street-car lines by electricity, and by the overhead trol-

52 KENTUCKY REPORTS. [VOL. 95.

Louisville Bagging Mfg. Co. v. The Central Passenger R'y Co.

ley system. (Acts of 1865–6, p. 43; Acts of 1871, vol. 2, p. 323; Acts of 1883–4, vol. 2, p. 1218; Acts of 1885–6, vol. 1, p. 526; Resolutions of Louisville city council of Feb. 23, 1888, Oct. 9, 1888, Dec. 20, 1889; Lewis on Eminent Domain, sec. 116, note; Dillon on Municipal Corporations, 4th ed., sec. 367, note; Taggart v. Newport R'y Co., 16 R. I., 668; Louisville R'y Co. v. City of Louisville, 8 Bush, 420.

2. The grant by the Legislature to the street railway company of the right to change its street-car system from horse-power to electricity is not the creation of an additional servitude, nor the taking of property; nor does it entitle the abutting property owners to demand compensation. Such use falls within the original dedication of the property for street purposes. (Thompson on Electricity, secs. 22 and 42; Keasby on Electric Wires, sec. 11; Lewis on Eminent Domain, sec. 124; Taggart v. Newport Street R. Co., 16 R. I., 668; Rafferty v. Central Traction Co., 147 Pa. St., 589; Detroit R. Co. v. Mills, 85 Mich., 634; Koch v. North Ave. R. Co., 75 Md., 222; North Baltimore R. Co. v. North Ave. R. Co., 75 Md., 247; Farrell v. Winchester Ave. R. Co., 61 Conn., 127; Williams v. Citizens' R'y Co., 130 Ind., 71; Lockhart v. Craig, 139 Pa. St., 419; Railway Co. v. Telegraph Co., 48 Ohio St., 426; Potter v. Saginaw R. Co., 83 Mich., 299; Hudson River v. Watervliet Co., 56 Hun (N. Y.), p. 67; Tracy v. Troy R'y, 54 Hun (N. Y.), 550; Williams v. City Electric R. Co., 41 Fed. Rep., 556; Mt. Adams R. Co. v. Winslow, 20 Ohio Weekly Law Bulletin, 420; Pelton v. East Cleveland R. Co., 22 Ohio Weekly Law Bulletin, 67; In re Third Ave. R. Co., 121 N. Y., 536; Halsey v. Rapid Transit Co., 47 N. J. Eq., 380.)

3. General experience of their use, in hundreds of cities and towns in the United States and Europe, has demonstrated that the use of the overhead trolley system of electricity, instead of mules, is cleaner, more healthful, and less injurious to the streets, less expensive to the city, and gives a far better service to the public, with less danger. No successful storage battery system, or underground wire system, of street railways has yet come into use. (Keasby on Electric Wires, p. 106; Taggart v. Newport R. Co., 16 R. I., 668.)

4. The bagging manufacturing company had no right to obstruct the streets by backing its wagons up at right angles to the sidewalk, to load and unload them. Such conduct is an unlawful obstruction of the street; and it can not complain that the operation of the street-car system prevents it from continuing such unlawful obstruction. (Lewis on Eminent Domain, sec. 125; Dillon on Municipal Corporations, secs. 716 and 727, note; Hobart v. Milwaukee Street R'y, 27 Wis., 194 (9 American Rep., 461); Rorer on Railroads, vol. 2, p. 1426; Hogencamp v. Patterson R. Co., 17 N. J. Eq., 84.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The Louisville Bagging Manufacturing Company, a

corporation, brought this action for an injunction, which was temporarily granted, restraining the Central Passenger Railway Company, a corporation, and its officers from constructing or operating an electric railway on Walnut street, between Nineteenth and Twentieth streets, in the city of Louisville, where plaintiff has a large building used for manufacturing bagging. H. R. Thompson, judge of the Louisville City Court, was also enjoined from proceeding, until termination of the action, to try J. J. Tapp, president of plaintiff, and others upon warrants against them for cutting down and removing posts erected by the railroad company for use in operating its cars.

The right to construct, and operate by electricity, the railway upon Walnut street, it appears, had been, before the action was commenced, granted to the company by resolution or ordinance of the general council of the city of Louisville, duly passed in pursuance of authority conferred by acts of the General Assembly. And as exercise of such delegated authority by municipal legislation has been often sanctioned and recognized by this court, the right so given to the Central Passenger Railway Company must be regarded as valid and effectual as if conferred directly by the General Assembly. Moreover, as legislative power to authorize construction of a railway upon a public street, and operation of it by even steam, has been distinctly and often held by this court to exist, we see no reason to deny power to likewise authorize construction of such railway to be operated by electricity. For it is well settled that the use of a public street for travel and transportation by means of railway cars falls within the purposes for which streets are established and dedicated. And it is only when other ways of travel and

transportation are prevented, or unreasonably obstructed, that courts can interfere to either enjoin or limit operation of railroad upon a public street.

It therefore seems to us the simple inquiry in this case is whether the manner in which the railway under consideration has been, or is designed to be, constructed and operated is such as to clearly impose a new and additional burden upon the land of plaintiff abutting Walnut street, and, as a consequence, entitling him to previous compensation for the right of way.

The first ground of complaint by plaintiff is that the railway track constructed in front of its manufacturing establishment will prevent loading and unloading vehicles used in transporting its goods and raw material in the manner heretofore done, which is by backing the wagon or dray up to and at right angle with the sidewalk. The answer to that complaint is, first, that such way of loading and unloading necessarily seriously obstructs not merely operation of every double-track railway, but proper use of a street for all other vehicles; second, there appears to 'be an ordinance of the general council prohibiting loading and unloading of vehicles in that mode.

The next ground is that operating an electric railway car upon a public street is dangerous to those who reside or do business thereon. Practical application of electricity as a power to drive machinery or move carriages, as also for illuminating purposes, is of recent date, and it is shown the system best adapted for the purpose, if yet discovered, is by no means a perfect one. The evidence of experts and men having actual experience shows that three different systems for moving railway cars by electricity have been tried in this country, viz., the underground

Louisville Bagging Mfg. Co. v. The Central Passenger R'y Co.

conduit system, storage battery system, and that of the overhead wire.   And it fully appears that the first two are as yet so defective or imperfect that, of several hundred electric railways in operation, there are not a dozen to which either system has been applied, all others being run by the overhead wire, or trolley system, the same used by the Central Passenger Railway Company.

To apply electrical power in that way requires erection at edge of the sidewalk, on each side of a street, of tall poles, about one hundred and twenty feet apart, and from top of opposite poles is stretched across the street a sustaining wire, which holds up the electric wire that is thus suspended over middle of the railway track, and from which, by means of the trolley pole, the electric current is connected with the motor placed under the car.

It will be thus seen that the electric wire is not, like telegraph, telephone and electric-light wires, near to buildings, but suspended over the railway track.   It further appears that the electric pressure, measured by volts, required to drive a street railway car is not so great as to destroy or seriously injure a person or animal coming in direct contact with it; injury, when it is produced, resulting only where a broken or detached telephone or telegraph wire falls on it.

The evidence in this case, which need not be considered in detail, shows that, although new and not fully perfected, the trolley system of operating street railway cars, when properly adjusted and supervised, is not much, if any more, dangerous than horse-power, and much less so than steam power, applied in the same way.   Moreover, while street railway cars thus operated go at greater speed, are more comfortable, and must in time become a

cheaper mode of travel, they can be easier controlled than horse-cars, and do not really more obstruct the streets, or interfere unreasonably with business transacted thereon.

It, therefore, seems to us that, in view of the benefit and convenience to the public of electric cars thus operated, and comparatively little inconvenience or danger they are to individuals, it would be going beyond the province of a court, and contrary to decided weight of judicial authority, to enjoin or limit their use, especially when a party seeking such remedy so signally, as has the plaintiff in this case, fails to show he has been unreasonably obstructed or hindered in his business, or that his rights have been illegally interfered with.

The judgment dissolving the temporary injunction and dismissing the action is affirmed.