CASE 39—ACTION FOR DAMAGES—MARCH 26.

# Ashland & Catlettsburg Street Railway Co. v. Faulkner.

APPEAL FROM BOYD CIRCUIT COURT.

1. DAMAGES—ELECTRIC CAR LINES ON HIGHWAY.—The owner of a lot abutting on a highway outside of a municipality is entitled to recover damages from an electric railroad company which has constructed a track in front of his lot tending to obstruct the free access to same.

2. SAME—APPROPRIATION OF PLAINTIFF'S LAND.—The question of whether the defendant actually appropriated any part of plaintiff's land for its track and the resulting damage, if it did so, was properly submitted to the jury, the evidence being conflicting.

3. SAME—EXCESSIVE DAMAGES.—A verdict for $665 in such a case is held by the court to be excessive in view of the evidence that the measure of obstruction and consequential damage is inconsiderable.

R. C. BURNS FOR THE APPELLANT.

1. A street railway is but an improved means of using a public highway, and no right of action exists in favor of an abutting property owner against it for damages unless some unnecessary injury is done to ingress and egress. It was, therefore, error to instruct the jury that if the appellant interfered with appellee's means of ingress to and egress from his said land to find for the appellee. Any occupation by a street railway of a public highway would of necessity interfere to some extent with the ingress to and egress from abutting property, but it is a lawful interference.

2. In the third instruction the measure of damages is not correctly set out. If the building and operation of the road upon the appellee's lot was a trespass, the measure of damages would be the value of the property taken and the injury done to the land by the entry.

3. The fourth instruction was also erroneous. It should have required the jury to ascertain the fair market value of the property just before it became generally known the street railway would be built and its value immediately after it was built and deduct the latter from the former, the difference being the measure of damages.

Citations: Elliott on Roads, 529, 530; Cooley's Const. Lim., 556; Eichels v. Evansville St. Ry. Co., 78 Ind., 261; Mills v. Parlin, 106 Ill., 60; Smith v. Pt. Pleasant & C. R. R. Co., 23 W. Va., 451; Fulton v. S. R. R. T. Co., 85 Ky., 640; L. & O. R. R. Co. v. Applegate, &c.; 2 Am. & Eng. R. R. Cases, 437, 440; 97 Ill., 506; 17 Am. & Eng. R. R. Cases, 163, 184; 30 Ohio St., 604; Louisville Bagging Mfg. Co. v. Cent. P. Ry. Co., 23 S. W. R., 592; Civil Code, 321; 3 Mar., 397; 1 Bibb., 400; 3 Mon., 415; 8 Dana, 298, 305; Lunsburg v. San Antonio R. T. St. Ry., 30 S. W. R., 533; Cumberland Tel. & Teleg. Co. v. United Electric Ry. Co., 29 S. W. R., 104; L. & N. R. R. Co. v. Orr., 91 Ky., 116.

JAMES ANDREW SCOTT FOR THE APPELLEE. (L. T. EVERETT AND BROWN & BROWN OF COUNSEL.)

1. The refusal of the lower court to split up the cause of action and have two suits—one for trespass and the other for obstruction of ingress and egress—was proper. Henderson v. McClain, opinion filed December 9, 1897; Smith v. Bogenschutz, 14 Ky. Law Rep., 305.

2. The jury were the sole judges of the weight of the evidence, and if there was any evidence upon which to base the verdict, to disturb it would be an invasion of the rights of the jury.

3. It was not misconduct on the part of the jury to make a measurement of the premises. A measurement by tape line is no more irregular than a measurement by the eye.

4. The special judge Proctor K. Malin, had no right to sign the bill of exceptions at a term of the court subsequent to that during which he was elected. Childers v. Little, 16 Ky. Law Rep., 521.

EVERETT AND BROWN & BROWN ON THE SAME SIDE.

The grant of the right of way to the appellant was invalid, and being invalid because in contravention of section 164 of the new constitution, the appellant was a tort feasor and had no right to, and can not, justify an interference with the possession of another whether rightfully or wrongfully.

Ashland & Catlettsburg Street Railway Co. v. Faulkner.

JAMES ANDREW SCOTT FOR THE APPELLEE IN A PETITION AND SUP-
PLEMENTAL PETITION FOR A REHEARING. (BROWN & BROWN AND
R. S. DINKLE OF COUNSEL.

Citations: City of Henderson v. McClain, 19 Ky. Law Rep., 1450;
Louisville Bagging Co. v. Central Passenger Ry. Co., 95 Ky.,
50; 44 Iowa, 11; 18 Ore., 237; 62 N. Y., 386; Cooley's Con.
Lim., 683; 67 Ill., 507; Elliott on Roads and Streets, 303; 107
Ill., 507; 111 Pa. St., 35; 26 Conn., 249; E. L. & B. S. R. Co. v.
Combs, 10 Bush, 382; Booth on Street Railways, sec. 94; Keas-
bey on Electric Wires, note 1, sec. 7, p. 97; same, sec. 27; 14
Ohio St., 524; 38 Ohio St., 41; 82 Ga., 320; 45 Kan., 264;
34 Mo., 259; 38 Mich., 262; 87 Mich., 361; 44 Iowa, 11; Hol-
loway v. L. St. L. T. R. R. Co., 13 Ky. Law Rep., 481; Lewis
v. Jones, 1 Barr., 336; Chess v. Manown, 3 Watts, 219; Chambers
v. Fury, 1 Yates, 167; 3 Wright, 340; Botts, &c., v. Simpsonville
& Buck Creek Tp. Co., 88 Ky., 55; Morawetz on Corporations,
sec. 197; Thompson on Corporations, sec. 343; Cook on Stock
and Stockholders, sec. 905; Covington Short-Route Transfer
Ry. Co. v. Piel, 87 Ky., 267.

R. C. BURNS FOR THE APPELLANT IN A RESPONSE TO THE PETITION FOR
REHEARING.

Citations: Dillons Munic. Corps. (3d ed.), secs. 701, 742; Kil-
linger v. Forty-second S. F. R. Co., 50 N. Y., 206; Louisville
Bagging Mfg. Co. v. Cen. Pass. Ry. Co., 95 Ky., 50; Rafferty v.
Central Traction Co., 147 Pa., 579; Williams v. Railway Co.,
46 Fed. Rep., 556; Briscom v. Railway Co., 79 Maine, 363; Pat-
terson St. Ry. Co. v. Grundy, 56 Am. & Eng. R. R. Cases, 456
(Sup. Ct. New Jersey); City of Henderson v. McClain, 19 Ky.
Law Rep., 167; Zehren v. M. E. Ry. Co., 75 Wis., 111; Ky.
State Con., sec. 242; Rigney v. Chicago, 102 Ill., 64; Chicago v.
Taylor, 125 U. S., 162; Ky. Acts., 1873, vol. 1, 516; E. L. & B.
S. Ry. Co. v. A. & C. St. Ry. Co., 96 Ky., 347;
162 Pa. St., 275; Reading v. Davis, 153 Pa., 360; Mc-
Dewitt v. Peoples Nat. Gas Co., 160 Pa., 367; 27 L. R.
A., 767; Jaynes v. Railway Co. (Neb.), 74 N. W. R., 67; Booth
on Electric Railways, secs. 83-54-75-76; Detroit St. Ry. Co.
v. Mills, 85 Mich., 634; Koch v. North Av. Ry. Co., 23 Atl. Rep.,
463; Patter v. St. Ry. Co., 83 Mich., 285; Barber v. Sagman
Union St. Ry. Co., 83 Mich., 299; Halsy v. Rapid Transit Ry.
Co., 20 Atl. Rep., 859; Mt. Adams & Eden Park Inland Ry. Co.,

Ashland & Catlettsburg Street Railway Co. v. Faulkner.

22 W. L. B., 67; Simmons v. Toledo, 5 Ohio C. Ct. Rep., 424; 'Cincinnati, &c., Ry. Co. v. City & Suburban Telephone Co., 48 Ohio St., 390; s. c. 27 N. E. R., 890; Lockhart v. Craig St. Ry. 'Co., 139 Pa. St., 419; s. c. 21 Atl. Rep., 26; Com. v. West Chester, 9 Pa. Cr. Ct. R., 542; Rafferty v. Central Traction Co., 1 Atl. Rep., 419; Taggert v. Newport, St. Ry. Co., 16 R. I., 669; s. c. 19 Atl. Rep., 326; William v. City Electric St. Ry. Co., 41 Fed., 556; Ogden Cy. Ry. Co. v. Ogden Cy., 26 Pac. Rep., 288; Plack v. Union Depot Ry. Co., 41 S. W. R., 915; Cosby v. O. & R. R. Co., 10 Bush, 288.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This suit was instituted by appellee against appellant, the Ashland & Catlettsburg Street-Railway Company, for damages arising from the location and operation of its road. He claims to be the owner of a lot of ground fronting the Ashland & Catlettsburg turnpike road, on which he had erected a frame building forty-two feet long and sixteen feet wide, in which he did business as a saloon keeper; that, in the construction of the building, he had left an intervening space of about ten feet between the front of the building and his property line on the east side of the turnpike road, and that, 'for the convenience of his patrons, he had constructed in this open space a well, put up a water trough, and laid down a platform 10x16 feet, on which wagons and other vehicles could stand when stopping in front of his saloon; that, as a result of these conveniences, his business was rendered profitable from the patronage of travelers upon this highway; that the appellant, forcibly and without right, took possession of a portion of that part of his lot which was next to and adjoining the turnpike road, and had built and was operating an electric street-car line thereon. And, by the second paragraph in his petition, he alleges that appellant had wrongfully constructed its line of street railway on the turnpike

road, so close to his property as to obstruct his ingress and egress from his property to the public highway.

It will be observed that the appellee seeks damages— First, for the illegal appropriation of a part of his lot; and, second, damages which result from building the street railway on the land of the turnpike company so close to his building as to materially injure his use of the turnpike. Pleadings being made up, the trial of the case resulted, under instructions given to the jury, in a verdict for appellee for $665, the basis of the recovery being both elements of damages enumerated above; and we are asked to reverse that, judgment.

The court, on motion of plaintiff, instructed the jury, first, that "if they believed from the evidence that the plaintiff, John Faulkner, was the owner and in possession of the property in controversy, and that the defendant, the Ashland & Catlettsburg Street-Railway Company, while plaintiff was the owner and in the possession of said property, by its officers, agents, or employes, entered upon said property, and constructed its line of street railway in front thereof on said property, the law is for the plaintiff, and the jury will so find." And, in fixing the measure of compensation under the state of case contemplated in the first instruction, the jury were told by instruction No. 3 that. "if they believed as in instruction No. 1, they will find from the evidence the market value of the entire tract of land just before it became generally known that the street railway was to be constructed in front of it, and find the value of the ground taken and occupied by it for all the purposes for which it was adapted, and to this sum they will add the amount, if any, they believe from the evidence the remainder of the tract is diminished by reason of the construction and operation of defendant's road."

On the issues raised by the second paragraph, the court instructed the jury that "if they did not believe from the evidence, and find as in instruction No. 1, but believed from the evidence that the defendant constructed its track upon the Ashland & Catlettsburg Turnpike Road, so close to plaintiff's property as to unreasonably interfere with the ingress and egress to and from said property, the law is for the plaintiff, and the jury will so find."

And in defining the measure of compensation, if they found the facts to be as set out in instruction No. 2, they were told to find from the evidence the value of plaintiff's property just before it became generally known that the defendant's railway was to be located in front of plaintiff's property, and then determine what proportion of the value is taken from the property by reason of the construction and operation of defendant's road, and such proportion would be the amount of damage.

The proof in the record shows that the east rail of the street-railway track is about seven feet from appellee's building; that the track at that point was laid down at grade on the road, and that the only elevation was the height of the rails, two or three inches; that the road between the rails was ballasted with gravel; that a crossing of three-inch plank was put on each side of the track, twelve or fifteen feet long, making a good crossing where wagons and other vehicles could pass over or be backed in across the track at that point to appellee's house from the turnpike road on the west side of the railway track; and that appellant's road was built on the east side of the turnpike road. There is no proof which conduces to show that the approach to appellee's property has been interfered with by the building of the road, except

[22]

by its proximity to the building, and that it is a new use of the street at that point, which, in some degree, interferes with appellee's use.

The question before us, therefore, is, was there such obstruction as to authorize recovery on this branch of the case? If the diminution in the value of appellee's property arose solely by reason of the location of the road in front of his property, this of itself furnishes no ground of complaint, as the whole trend of modern authorities is to the effect that the operation of a street railway is a legitimate use of the highway, and an exercise of the public right of travel. They are but a means of using the public streets to a greater advantage for the very purpose for which they were laid out, and are recognized as the best and cheapest mode yet devised of getting about in a city, and do not impose any new or additional burdens for which abutters are entitled to compensation, unless they be so constructed as to deprive the abutter of some easement, or in some way cause him special damage for which he is entitled to recover, as they do not hinder the use of the rest of the street for the public travel, and in but a very small degree obstruct travel on the part occupied by their tracks. (See Wood on Railroads, 748, and authorities there cited, and Elliott on Railroads, vol. 3, 1635.) On this point Judge Dillon says: "The appropriation of a street for a horse railway, and used in the ordinary mode, is such a use as falls within the purposes for which the street was dedicated or acquired under the power of eminent domain." (Dillon's Municipal Corporations, (3d. Ed.), Sec. 722). Judge Cooley says: "When land is taken or dedicated for a town street, it is unquestionably appropriated for all the ordinary purposes of a town street, not merely for the purposes to which such streets were formerly applied, but those de-

manded by new improvements and new wants.   Among
these purposes is the use for carriages which run upon a
grooved track; and the preparation of important streets in
the cities for their use is not only a frequent necessity,
which must be supposed to have been contemplated, but is
almost as much a matter of course as the grading and pav-
ing."   Cooley, Const. Lim., 556.

As early as 1872 this question was thoroughly consid-
ered by the Court of Appeals of New York in the case of
Killinger v. 42d Street St. Ry. Co., 50 N. Y., 206.   In that
case the plaintiff alleged that the track of defendant's
road was unnecessarily or negligently or willfully laid so
near the sidewalk as to impair the use of his premises, and
depreciate its rental value.   The court held that "abutting
owners have an easement in the street, in common with the
whole people, to pass and repass, and also to have free ac-
cess to their premises; but the mere inconvenience of such
access occasioned by the lawful use of the street is not the
subject of action."

The Supreme Court of Pennsylvania has also thoroughly
considered this question in the case of Rafferty v. Cen-
tral Traction Co., 147 Pa. St., 579 [30 Am. St. R.,
763; 23 Atl., 884.]   This was an injunction suit to prevent
the laying of rails on a street in such proximity to the curb
as to interfere with the ingress and egress of the abutting
property holders, and the rights of such property holders
were exhaustively discussed by the court.   It was claimed
by the plaintiffs that their right of free access to their
property along the street was interfered with because ve-
hicles could not stand between the tracks and the curbing
without interfering with the cars.   It was held that "the
right of the property holder is not changed in this respect.
He has the same right after the tracks are laid as he had

before. It is a right which must be exercised in reason, whether there are car·tracks on the street or not. In no circumstances does it confer the privilege of obstruction by unreasonable use, but the reasonable exercise of the right gives the street car company no right to arrest it;" the court finally holding that "the operation of a street railway by electricity is not an additional servitude or burden on the land which will entitle the owner of property abutting on the street to compensation, either by injunction for damages by the construction and maintenance of such a track. . . . If at any time, the owner of property abutting on the street has occasion for the presence of vehicles in front of his property on the street to take away or deliver persons or goods, he may exercise that right for such reasonable time as is necessary for his purpose; and if, in the exercise of such right, the passage of street cars is impeded, the street cars must wait."

In the case of Williams v. Railway Co., 41 Fed. Rep., 556, the court said: "The operation of a street railway by mechanical power is not an additional servitude or burden on land already dedicated or condemned to the use of a public street, and is therefore not a taking of private property, but is a modern and improved use of the street as a public highway, and affords to the abutting property holder, though he may owe the fee of the street, no legal ground of complaint."

In the case of Briggs v. Railroad Co., 79 Me., 363, [1 Am. St. R., 316; 10 Atl., 47], the court said: "We do not think any construction and operation of a street railway in a street is a new and different use of the land from its use as a highway. The laying down of rails in the street and the running of street cars over them for the accommodation of persons desiring to travel on the street is only

a later mode of using the land as a way—using it for the very purpose for which it was originally taken."

In the case of Patterson St. Ry. Co. v. Grundy, 56 Am. & Eng. R. R. Cases, 456 [26 Atl., 788], the Supreme Court of New Jersey held that "abutting owners' rights in a street in front of their property are subservient, unless such use imposes an additional servitude upon the land taken by the street or the abutting land; but when a public use, authorized by law, takes no property of the individual merely affecting him by proximity, the necessary interference with his business or the enjoyment of his property occasioned by such use furnishes no basis for damages."

In the case of Detroit Street Railway Co. v. Mills (Mich.), 46 Am. & Eng. R. R. Cases, 616 [48 N. W., 1011], the court held that "street railways, when constructed so as not to interfere with the rights of others upon the streets, form no obstruction to such use and enjoyment. They make no more noise than the omnibus and other heavy vehicles, are not more dangerous, and no more interfere with access to the abutting lots. They constitute a modern and improved use only of the street as a public way;" holding that the abutting property owner would not be entitled to compensation for such use, in the absence of a statute giving it or plain proof of such injury.

In the case of Louisville Bagging Mfg. Co. v. Central Pass. Ry. Co., 95 Ky., 50, [44 Am. St. R., 203, 23 S. W., 592], this court said: "It is well settled that the use of a public street for travel and transportation by means of railway cars falls within the purposes for which streets are dedicated; and it is only when other ways of travel and transportation are prevented or unreasonably obstructed that courts can interfere to either enjoin or limit the oper-

ation of railroads upon a public street. . . . The trolley system of operating street cars, when properly adjusted, is not much, if any, more dangerous than horse power. . . . Moreover, while street-railway cars thus operated go at a greater rate of speed, and are more comfortable, and must in time become a cheaper mode of travel, they can be easier controlled than horse cars, and do not really more obstruct the street or interfere with business transacted thereon."

This question has been so exhaustively discussed, both in cases and text-books, as to leave but little to be said; and the rule is that a street railway may be placed and operated upon any part of a public street of a municipal corporation which is used by vehicles without increasing the burden of the servitude, and the owner of the fee is not entitled to compensation because of such use of the street upon which his property abuts merely because he is affected by the proximity of the tracks to his property, without proof of special damage resulting therefrom.

It does not appear that there was such obstruction of appellee's use of the public highway in front of his house by the railway as would justify recovery, if, as a matter of fact, the railway was built entirely upon the turnpike road. While it is true that there is not sufficient room between the tracks and the house of appellee for wagons and other vehicles to stand as they formerly did, there is nothing to hinder vehicles from being driven across the tracks at that point, or standing on the space between the rails, as cars pass there only at intervals of ten or fifteen minutes. Most of the witnesses who testify on this point state that there was no diminution whatever in the salable value of appellee's property resulting from the operation of the road, and no witness except appellee himself fixes

Ashland & Catlettsburg Street Railway Co. v. Faulkner.

the damages as high as the verdict of the jury. The verdict is excessive, and palpably against the weight of the evidence, and the proof did not authorize the submission to the jury of the questions of fact embraced in instructions Nos. 2 and 4.

But upon the question as to whether appellant had appropriated, for the use of its track, land to which appellee actually held the legal title, the proof is conflicting, and, in our opinion, this issue was properly submitted to the determination of the jury; but, as it is impossible to say how much the verdict of the jury may have been affected by the other question, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.

JUDGE GUFFY DISSENTING, DELIVERED THE FOLLOWING OPINION:

The object of the suit instituted by appellee (plaintiff below) was to recover damages against defendant upon two grounds: First, that it had forcibly entered and taken possession of his property, and erected thereon a street-railway track; and second, had built the same so near to his property as to obstruct his ingress and egress to and from the turnpike road upon which his property fronted.

A trial resulted in a verdict and judgment in favor of plaintiff for $665, and appellant appealed to this court, and this court, in an opinion by a majority, reversed the judgment appealed from. It seems to me that the majority opinion is not sustained by the law, and is so far-reaching in its effects upon the rights of property holders that I feel constrained to enter and file this dissenting opinion.

It seems to me that the reversal of the judgment was unauthorized for several reasons. The opinion in effect

decides that the railway as built does not interfere with the ingress or egress of appellee to and from the turnpike road, when in fact several witnesses testified that it did seriously obstruct the ingress and egress. One witness stated that vehicles could not be driven across the track of the railway without breaking them, and, while it may be true that appellant's proof was quite different, yet it was the province of the jury to weigh and determine as to the truth of the matter, and especially so in this case, for this record discloses that, upon motion of appellant, the jury were permitted to view the track and surroundings. It seems to me that the majority opinion is an invasion of the province of the jury as to the finding of facts, and will upon the next trial bar appellee's right to show and recover for the obstruction complained of. The majority opinion seems to proceed upon the idea that the building of a street railway is no new servitude imposed upon a street, and therefore abutting property owners can not recover anything resulting from injury to their property on account of the building of such railways, and certainly so unless such building practically destroys ingress and egress to and from the street.

Quite a number of authorities are cited in support of the opinion. I have examined most of them, and am unable to see that they support the opinion of the majority. Almost if not every one recognizes the law to be that, if the railway materially obstructs the ingress and egress, the property owner can recover. I think that all the authorities relied on in the opinion apply to cases in States having a different constitutional provision from that in our Constitution in regard to the taking of private property for public uses. It is a well-settled rule of law in this State that a party may have a perfect and legal right and title

to an easement, and, although it may not be exclusive of
the public generally, yet he can no more be deprived of
such right to such easement than he can be deprived of
any other right.

The case referred to in the opinion of Louisville Bagging
Mfg. Co. v. Central Pass. Ry. Co., 95 Ky., 50, [44 Am. St.
R., 203; 23 S. W., 592], is not applicable in the case at bar.
The main question in the case *supra* was whether the rail-
way company should be enjoined from erecting an electric
street car line which it was alleged, among other things,
would prevent the bagging company from unloading ve-
hicles by backing them up to and at right angles to the
sidewalk.  The court held that such loading and unload-
ing would necessarily obstruct the proper use of the street
for other vehicles, and, besides, is forbidden by city ordi-
nance.  It is further said in the case *supra,* that the plain-
tiff had signally failed to show that he had been unreason-
ably obstructed or hindered in his business, or that his
rights had been illegally interfered with.  No reference is
made in the opinion *supra* to sections 164 nor 242 of the
present Constitution, if, indeed, the present Constitution
was in force at the commencement of the suit referred to
above.

It is perfectly manifest to my mind that the majority
opinion is in direct conflict with the opinion in the case of
City of Henderson v. McClain 102 Ky., 402, [43 S. W., 701].
McClain recovered a judgment against the city of Hender-
son for injuries to his property resulting from street im-
provements.  There was no physical taking of the prop-
erty, nor was the work of improvement done in an unskill-
ful manner, but the result of the improvement was to ma-
terially decrease the value of McClain's abutting lot.  It

has often been decided by this court, under the former Constitution, that no recovery could be had in such cases.

Section 14 of the Constitution of 1850 says: "No person shall, for the same offense, be twice put in jeopardy of his life or.limb; nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him." The same provision is in section 13 of the bill of rights of the present Constitution. The first part of section 242 of the present Constitution reads as follows: "Municipal or other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid, before such taking, or paid or secured at the election of such corporation or individual before such injury or destruction."

This court, in case of City of Henderson v. McClain, *supra*, after reviewing the law as it existed prior to the adoption of the present Constitution, and as expounded by this court, and after referring to sections 242 and 13, quoted above, said: "The adoption of this section, in addition to the provisions of section 13, in our view undoubtedly indicated an intention to change the organic law of the State, and to abolish the requirement of the direct physical injury to the property in order to establish a claim for damages. The language used is that municipal corporations shall make just compensation for property taken, injured, or destroyed by them. The city undoubtedly has the right to take private property, having the right of eminent domain. It also has the undoubted right to improve the streets for the public use, in a proper manner, when thereto authorized by legislative authority. If,

however, in making the improvements, it takes, injuries, or destroys private property, compensation must be made, unless consent has been given. This exact question appears to have been decided in several of the States in which new Constitutions, containing similar provisions, have been adopted in recent years. In Illinois the old Constitution contained a provision similar to that contained in section 13 of our Constitution. By the Constitution of 1870 (article 2, sec. 13), the provision was made to read: 'Private property shall not be taken or damaged for public use, without just compensation.' And, while the rule under the former Constitution had been held as in the section quoted above from Dillon (section 722), it has been held in numerous cases that the new rule introduced by the present Constitution required compensation in all cases where it appears 'there has been some physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.'

"In Rigney v. City of Chicago, 102 Ill., 64, it was there held 'that the introduction of that word ["damages"], so far from being superfluous or accidental, indicated a deliberate purpose to make a change in the organic law of the State, and abolish the old test of direct physical injury to the corpus or subject of the property affected.' This doctrine was approved by the Supreme Court of the United States, in an opinion delivered by Mr. Justice Harlan, in the case of City of Chicago v. Taylor, 125 U. S., 162 [8 Sup. Ct., 820]. Referring to the Rigney case, he said: 'The conclusion there reached was that, under this constitu-

tional provision, a recovery may be had in all cases where private property has sustained a substantial damage by the making and using an improvement that is public in its character; that it does not require that the damage shall be caused by a trespass, or an actual physical invasion of the owner's real estate, but, if the construction and operation of the railroad or other improvement is the cause of the damage, though consequential, the party may recover. We regard that case as conclusive of this question. The case of Railroad Co. v. Reich, 101 Ill., 157, is in point on this question of damages; and the case of City of Chicago v. Union Bldg. Ass'n, 102 Ill., 379 [40 Am. R., 598], also reviews the authorities, and approves the doctrine in Rigney v. City of Chicago, *supra*.'

"In Missouri a similar constitutional provision has been adopted, and a similar construction given. Sheehy v. Railway Co., 94 Mo., 574, [4 Am. St. R., 396, 7 S. W., 579]. In Pennsylvania a constitutional provision was adopted in 1874, exactly similar to section 242 of our Constitution, which has been construed in Borough of New Brighton v. Peirsol, 107 Pa. St., 280, as the provision of the Illinois Constitution. In a number of other States which have adopted the same or similar constitutional provisions the courts have gone as far or further than the Illinois courts in permitting recovery for consequential damages in such cases. See Dill. Mun. Corp. (4th Ed.) secs. 990-995a, inclusive, and notes. We conclude that, under the averments of the petition in this case, admitted by the demurrer to be true, there was a right of recovery."

Several States have, of late years, inserted, in their Constitutions, provisions similar to section 242 of our Constitution. Section 8 of article 15 of the Constitution of Pennsylvania, adopted in 1874, provides that municipal

and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured, or destroyed by their construction or enlargement of their works, etc.

The Supreme Court of Pennsylvania, in Borough of New Brighton v. Peirsol, 107 Pa. St., 283, discussed and construed the section of the Constitution aforesaid. Peirsol brought suit against New Brighton to recover damages for the injury caused to plaintiff's property abutting on Lock street by reason of a change of grade of said street, made after the plaintiff purchased his lot, and obtained a verdict for $193. The court clearly recognized the importance of the change made by the Constitution of 1874. The concluding portion of the opinion is as follows: "The claim now is for change of grade made since the defendant in error purchased, and for damage sustained by work done since the adoption of the Constitution of 1874. Judgment affirmed."

The decision *supra* was rendered some time before the adoption of our present Constitution, and section 242 thereof is the same in substance as the section of the Constitution of Pennsylvania, before quoted; and it is a well-settled rule of construction that the framers of the present Constitution intended section 242 to mean and have the same effect given by the Supreme Court of Pennsylvania, in the case, *supra*, to section 8 of the Pennsylvania Constitution. The provision of the Constitution of Illinois adopted in 1848, in regard to the taking of private property for public use, was the same as section 13 of the present Constitution of this State; but in 1870 Illinois adopted a new Constitution, which provided that private property should not be taken or damaged for public use without just compensation.

In Rigney v. City of Chicago, 102 Ill., 75, the Supreme Court of Illinois, in a very elaborate opinion, discussed the rights and remedies of abutting property owners, and also discussed and construed the new Constitution of Illinois. Rigney sought to recover against the city of Chicago for injury to his property resulting from street improvements. The trial court dismissed his petition, and an intermediate court, called the "court of appeals," affirmed the judgment, and he appealed to the Supreme Court of the State.

The court, among other things said: "The position of appellee that the new Constitution was simply intended to conserve existing rights, and that, therefore, there can be no recovery in any case except where there has been an actual appropriation of, or physical injury to, the plaintiff's property, is founded in part upon certain expressions to be found in some of the cases which have arisen since the adoption of the new Constitution, which seems to recognize as still existing the old test that the injury must be direct and physical, where there has been no actual appropriation or taking of the property. It is hardly necessary to observe that that which is said in any case upon a matter not necessarily involved in the decision is not to be regarded as authoritative or binding. Such expressions can only be regarded as indicating the views of the members of the court, and particularly that of the writer of the opinion, upon a matter of which the court is not required to, and consequently can not judically determine; and hence, while they are entitled to respectful consideration, they are never accepted as authoritative. An examination of the cases, it is believed, will clearly show that no express decision to that effect has ever been made; and, even if such a case could be found, it must have been made without due

consideration, and should not be followed, for to recognize such a rule would, in effect, as we have already shown, be to render inoperative a plain provision of the Constitution. . . . The question, then, recurs: What additional class of cases did the framers of the new Constitution intend to provide for which are not embraced in the old?

"While it is clear that the present Constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old Constitution, yet we think it equally clear that it was not intended to reach every possible injury that might be occasioned by a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns or cities which directly impair the value of private property, for which the law does not, and never has, afforded any relief. For instance, the building of a jail, police station, or the like will generally cause a direct depreciation in the value of neighboring property; yet that is clearly a case of *damnum absque injuria*. So, as to an obstruction in a public street, if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie.

"In all cases, to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that, by reason of such disturbance, he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject, the common law afforded redress in all such cases; and we have no doubt it was the intention of the

framers of the present Constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law.

"The English courts, in construing certain statutes providing compensation for injuries occasioned by public improvements, in which the language is substantially the same as that in our present Constitution, after a most thorough consideration of the question, lay down substantially the same rule here announced. Chamberlin v. Railway Co., 2 Best & S., 605, 110 E. C. L., 605, 617; Beckett v. Railway Co., L. R., 1 C. P., 241, on appeal, L. R., 3 C. P., 82; McCarthy v. Board, L. R., 7 C. P., 508. These statutes require compensation to be made where property was 'injuriously affected', which the English courts construe as synonymous with the word 'damaged.' Hall v. Mayor, etc., L. R., 2 C. P., 322; Railway Co. v. Gattke, 3 MacN. & G., 155. The rule we have adopted was unanimously sustained by the House of Lords in the McCarthy Case, *supra*, and is believed to be in consonance with reason, justice, and sound legal principles; and while it has not heretofore been formulated in express terms, as now stated, yet the principles upon which the rule rests are fully recognized in the previous decisions of this court, particularly in City of Shawneetown v. Mason, 82 Ill., 337, [25 Am. R., 321]; City of Pekin v. Brereton, 67 Ill., 477, [16 Am. R., 629]; Railroad Co. v. Francis, 70 Ill., 238; City of Pekin v. Winkel. 77 Ill., 56; and city of Elgin v. Eaton, 83 Ill., 535, [25 Am. R., 412]. In this last case, the city of Shawneetown and Brereton Cases are approvingly referred to. In the city of Shawneetown Case it was said: 'The true question is whether the property was injured by the improvements. If not, then there is no damage, and can be no recovery. If there is, then the recovery must be measured by the extent of the loss,' etc.

"One of the elements of damage distinctly recognized in this case was the physical obstruction of the right and means of access to the plaintiff's premises.  And so of the Brereton Case, Winkle Case, and Eaton Case, *supra*, and Stack Case, 85 Ill., 377, [28 Am. R., 619].  In the light of these authorities, we are clearly of the opinion that the circuit court erred in refusing appellant's instruction, and also in giving appellee's; and for these errors the judgment of that court should have been reversed by the appellate court, and for not doing so the judgment of the appellate court must be reversed, and the cause remanded, with directions to that court to reverse the judgment of the circuit court, and remand the cause for further proceedings in conformity with the views here expressed.

Judgment reversed."

In City of Chicago v. Taylor, 125 U. S., 164, [8 Sup. Ct., 820], the same question was under consideration.  Taylor had brought a suit, and obtained judgment against the city of Chicago for injury to his property by reason of certain street improvements erected by special ordinances of the city council, and the city appealed.  Justice Harlan delivered the opinion of the court, and, upon a thorough review of the authorities he sustained the contention of Taylor that, under the Constitution of 1870, he was entitled to recover for the injury resulting to his property by reason of the street improvements.  The opinion concludes as follows:  "It would serve no useful purpose to examine in detail all the requests for instructions, and compare them with the charge, or discuss the questions arising upon the exceptions to the admission of evidence.  After a careful consideration of all the propositions advanced for the city, we are unable to discover any substantial error committed to its prejudice.  It may be as suggested by

[ 23 ]

its counsel that the present Constitution of Illinois in regard to compensation to owners of private property "damaged" for the public use has proved a serious obstacle to municipal improvements; that the sound policy of the old rule, that private property is held subject to any consequential damages that may arise from the erection on a public highway of a lawful structure, is being constantly vindicated; and that the constitutional provision in question is "a handicap" upon municipal improvement upon public highways.    And it may also be, as is suggested, doubtful whether a constitutional convention could now be  convened that would again incorporate in the organic law the existing provision in regard to indirect or consequential damage to private property so far as the same is caused by public improvements.   We dismiss these several suggestions with the single observation that they can be addressed more properly to the people of the State in support of a proposition to change their Constitution. We perceive no error in the record, and the judgment is affirmed."

The Supreme Court of Missouri has passed upon a constitutional provision similar to section 242.   Sheehy sued the Kansas City Cable Railroad Company for injury to his property on account of a change of grade of the street.   It was admitted that the city had a right to authorize defendant to change the grade, but Sheehy recovered judgment for $5,000, and the defendant cable railroad company appealed.

The case is reported in 94 Mo., 574, [4 Am. St. R., 396, and 7 S. W., 579].   I quote as follows from the opinion: "The court, as shown by the instructions given as well as by those refused, tried the case on the theory that while the city had the right by ordinance to change the grade of

said street in front of plaintiff's property, and to author-
ize defendant to make such change, still the defendant was
liable for any damage resulting to plaintiff by reason of
such change. It is insisted by counsel that this theory
was erroneous and that the city being fully empowered
by its charter to grade, alter, and change the grade of
its streets, and having changed the grade of Ninth street
at this locality by ordinance, and authorized and permit-
ted defendant to grade the same for the purpose of con-
structing its road thereon, it is not liable for damages
resulting therefrom. This point is not well taken.

"Anterior to the adoption of the Constitution of 1875,
and as far back as the case of City of St. Louis v. Gurno, 12
Mo., 414, it was the established rule in this State that
where a municipality was invested with the control of its
streets, and the power to fix, alter, and change the grade
of the same, that any damage resulting to an abutting
property owner from the change of grade was *damnum
absque injuria*, unless the injury should be shown to have
resulted from the negligent or improper manner in which
the work was done. Section 21, art. 2, of the Constitution
of 1875, which provides that 'private property shall not be
taken or damaged for public use without just compensa-
tion,' has changed this rule. Werth v. City of Springfield,
78 Mo., 107.

"In this case it is held that 'when property is damaged by
establishing the grade of a street, or by raising or lower-
ing the grade of a street previously established, it is dam-
aged for public use within the meaning of the Constitu-
tion.' It is clear that the city of Kansas, under its charter,
had the power to change the grade of Ninth street, and it
is equally clear, under the provision of the Constitution
above quoted, that if, in the exercise of that power, the

property of an abutting owner was damaged, such owner would be entitled to recover such damages from the city. And, if such liability would attach to the city, it necessarily and logically follows that a railroad company which had the right conferred on it to alter the grade of the street for the purpose of constructing its road would also be liable to an abutting property owner for damages to his property by reason of such alteration.

"In such cases the privilege granted the railroad 'would be yoked with a liability.' That the owner of property abutting on a street has such an easement therein as would support an action for damages peculiar to him is sustained by the following cases: Lackland v. Railroad Co., 31 Mo., 181; Werth v. City of Springfield, *supra;* Householder v. City of Kansas, 83 Mo., 488; McElroy v. Kansas City, 21 Fed., 257; Story v. Railroad Co., 90 N. Y., 122, [43 Am. R., 146]; Lahr v. Railway Co., 104 N. Y., 268, [10 N. E., 528]; Railroad Co. v. Eddins, 60 Tex., 663; Cross v. Railroad Co., 77 Mo., 318. The theory upon which the court tried the case, as embraced in the instructions, was a correct one. The judgment is affirmed with the concurrence of the other judges, except Ray. J., absent."

I respectfully submit that the foregoing authorities show conclusively that the majority opinion is not sustained by the authorities relied on therein, and is contrary to the weight of all the authorities bearing upon the question at issue. I further submit that the doctrine of the majority opinion is contrary to equity and natural justice.

The majority opinion in this case, as I understand it, holds that a street railway may be located and run by the very door of the house of the abutting lot owner if his house happens to be upon the line of the street, and, if the track is leveled up as described in the opinion, that the property

owner can have no redress, although we know that such a use of a street would necessarily greatly lessen the value of his property, and cause the lives of himself and children to be in imminent peril whenever they went out of the house for any purpose whatever, for they would then be upon the railway track, liable to be struck by the electric car.

If the above is not the true construction of the majority opinion yet it is unquestionably true that the opinion sustains the right of a street railway to be run right along the curbing of a sidewalk, which would practically destroy all the business houses which might be on that side of the street. If a street railway was erected along the curbing of the sidewalk on the west side of Fourth street in Louisville, who would dispute the statement that the property on that side would at once be injured fifty per cent. or more of its value if it was believed that the street-car line was permanently so established?

I have discussed this question so far upon the ground upon which the majority opinion seems to be based, namely, that the doctrine of street railways and the uses for which streets were established and dedicated applies. In my opinion, the power to establish street railways in towns and cities has no application to the case at bar. The answer of defendant (now appellant) shows that the line of railway and property in contest is not within the boundary of any town or incorporated city. That plea is made in the answer, and by it the appellant was by the court below held to be exempted from the provisions of section 164 of the Constitution; but, if the appellant is held to be entitled to all the privileges and protection of the law applicable to cities and towns, then it should be held to be subject to the provisions of section 164 of the Constitution,

and, if so held, the entire power exercised by it was and is unconstitutional.

My judgment is that no turnpike company or commissioners or the county court have any legal power or right to authorize the construction of a street railway upon any turnpike or county road. It would be a new service, and one not contemplated by the law authorizing the establishment of county roads or turnpike roads, and would seriously interfere with the safe and convenient and proper use of such highways. It is evident to my mind that the turnpike company in this case had no authority to authorize the construction of the railway in question. It will be seen from the record, as I understand it, that appellant and appellee both hold under Kinner. Kinner only granted the right of way to the turnpike company for a turnpike road; hence it could be used for nothing else. The fee remained in him, and passed to his vendees, subject only to the use granted by Kinner. If I am right in this, it follows that appellant violated both the property right and right of easement of appellee, and the instructions were more favorable to appellant than it was entitled to.

There may be some reason and equity in ruling the law as strictly as it can be legally done as to improving streets in towns, and allowing railways to be established therein, because the public are to be greatly benefited; but in the case at bar it is manifest to me that the railway in question was erected for the sole benefit of the corporation, and that neither the turnpike company nor the commissioners had any lawful authority to grant to the railway the right of way over any part of the county road, and certainly none to the injury of the plaintiff's property, nor to the detriment of his easement. It appears in this case that appellant, by force, sawed off part of appellee's porch

or platform, and removed it, and by force held or tied him while they laid the track at that point. From the proof in this case, I incline to the opinion that the appellee was the rightful owner of the land in contest. Appellant's contention is that the rail of the track is seven feet from appellee's house. Conceding that to be true, I still think that a court must judicially know that his ingress and egress to and from the road is materially and unreasonably obstructed thereby. Corporations should be protected in the full enjoyment of their legal rights, but the individual property holder should also have the full protection of the law. Section 242 of the Constitution was evidently made to give greater protection to the citizen than he had theretofore enjoyed, but, if the majority opinion in this case is to be the law of the land, the section *supra* amounts to nothing.

The importance of the questions involved is my only apology for this dissenting opinion. I think the judgment appealed from should be affirmed.

CHIEF JUSTICE HAZELRIGG DELIVERED THE FOLLOWING RESPONSE TO A PETITION FOR A REHEARING:

This case was argued by counsel and considered by the court on the original hearing as one involving the location of a street railway on a street of a town. It developed from an inspection of an averment in one of the various pleadings—filed, not by the appellee, but by the appellant —that the location of Faulkner's property is in fact not within the corporate limits of a town. We can not, when presenting it for the first time, consider a matter of this importance on rehearing. In the opinion, however, we hold the evidence of injury by obstruction insufficient for submission, and to this extent we modify the original opinion. It is true that the plaintiff himself neither in his

examination in chief nor in his cross-examination makes out a case of obstruction to his property. He rests his case on the claim that his lot had been absolutely invaded, and a part taken by the company; and even when recalled, later in the progress of the trial, his testimony on the point involved is incompetent, and too general to support a claim for damages for obstruction. There is some testimony, however, by other witnesses, conducing to show that the ingress and egress had been obstructed by the track of the railway; and we know from common observation that the rails of such a road do in a measure obstruct the ingress and egress, when room is not left for passage between them and the abutting property. The question should be left to the jury to determine to what extent the property has been damaged by reason of this obstruction.

We think the damages on this branch of the case are shown by the proof to be quite small, and we adhere to the original opinion that on the whole case the damages found are excessive. On return of the case, either party may amend their pleadings, raising such issues as may be involved. Petition overruled.